An objective review of the record convinces us, however, that Jalil introduced sufficient evidence to call into question Avdel's true motivation in discharging him and, accordingly, to defeat Avdel's motion for summary judgment. The timing of the discharge in relation to Jalil's EEOC complaint may suggest discriminatory motives on the part of Avdel.[6] Moreover, the absence of a written rule against radio headsets and the presence of a dispute whether there was an unwritten rule could permit the inference, in light of the timing of the discharge, that Avdel was harassing Jalil, trying to induce his insubordination to have a pretext for firing him, *see Brown*, 746 F.2d at 1411; *Nulf*, 656 F.2d at 559, or it could suggest the very real possibility that Avdel "seized upon this instance of insubordination to fire" Jalil. *See Leonard v. City of Frankfort Elec. & Water Plant*, 752 F.2d 189, 195 (6th Cir.1985). In any event, the evidence created a factual issue regarding motivation that properly belongs to the factfinder.

## V.

We hold that the district court properly granted summary judgment for defendant on plaintiff's national origin discrimination claim, but erred in granting Avdel summary judgment on the retaliatory discharge claim. Plaintiff established a prima facie case of retaliatory discharge, and countered defendant's explanation for Jalil's termination with sufficient evidence to raise a genuine issue of fact as to defendant's true motivation for firing him. The matter was therefore within the sole province of the finder of fact and could not be resolved on summary judgment.

Accordingly, we will reverse the grant of summary judgment on the retaliatory discharge claim and remand the case for further proceedings consistent with this opinion.

The UNITED STATES

v.

Peter HUFF, John James Davis.

Appeal of Peter HUFF.

Nos. 88–3733, 88–3734.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) April 27, 1989.

Decided May 10, 1989.

---

G. William Bills, Jr., Pittsburgh, Pa., for appellant.

Charles D. Sheehy, Acting U.S. Atty., Paul J. Brysh, and Bonnie R. Schlueter, Asst. U.S. Attys., U.S. Attorney's Office, Pittsburgh, Pa., for appellee.

Before SEITZ, SLOVITER and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

Defendant Peter Huff was indicted in the Western District of Pennsylvania in indictments 87–167 and 88–72. Indictment 87–167 was for a robbery on July 30, 1987, at the Summit Bank at Salix, Cambria County, and charged him with bank robbery, 18 U.S.C. § 2113(a), count one, assault with a dangerous weapon during the robbery, 18 U.S.C. § 2113(d), count two, and use of a handgun during the robbery, 18 U.S.C. § 924(c), count three. Indictment 88–72 was for a robbery at the Peoples Bank and Trust Company, at Jerome, Somerset County, and charged him with the same three offenses in the same sequence.

Huff was arrested on the charges in Youngstown, Ohio, on Friday, February 19, 1988, and, prior to appearance in any court on the charges, gave oral and written inculpatory statements. He subsequently pleaded not guilty to all charges. Thereafter, in each case he filed a motion to suppress his statements. He alleged that he was arrested on February 19, 1988, at 11:45 a.m. by FBI agents in Youngstown and gave an oral statement. He then requested an attorney to whom he spoke on February 19, 1988 at 1:40 p.m. On Monday, February 22, 1988, he signed written statements at 8:30 a.m. He was arraigned and made his initial appearance before a magistrate on February 22, 1988, at 11:00 a.m. In his motions, he asserted that the statements should be suppressed because his constitutional rights had been infringed when they were taken and, in this regard, he cited the delay between his arrest and arraignment.

Separate hearings were held in the proceedings under each indictment on the motions to suppress, even though the same statements were involved. On May 3, 1988, and May 5, 1988, an evidentiary hearing, at which the government and Huff himself presented witnesses, was held on indictment 87–167 before Judge Simmons who reserved decision on the motion. On June 10, 1988, a suppression hearing was held on indictment 88–72 before Judge Diamond who on that day entered an order denying the application for suppression.

On June 20, 1988, pursuant to a plea agreement, Huff, represented by an attorney, appeared before Judge Diamond in both cases and entered a plea of guilty to the second count of both indictments. The plea agreement provided that the other counts of both indictments would be dismissed and the government would not oppose a request by Huff for concurrent sentences. Judge Diamond explained to Huff that by entering a plea of guilty he would be giving up "important and significant

constitutional and other legal rights" including, among others, the right "to challenge prior to trial any evidence that the government might have obtained during the course of an arrest" and "that would include any statements that you may have given to the authorities." Huff acknowledged his understanding of that. The judge also explained that if, upon reading the presentence report, he concluded that he could not sentence Huff to concurrent sentences, Huff would have the opportunity to withdraw his plea but that "under any other circumstances you will not be permitted to withdraw your plea." Huff acknowledged his understanding of that as well.

The judge carefully explained the possible sentences for the offenses and described the sentencing guidelines to Huff, as they were going to be applicable to any sentence under indictment 88–72, though they would not apply under indictment 87–167, a pre-guidelines case. He also told Huff that under the sentencing guidelines parole had been abolished so that "there will be no parole for any sentence under the guidelines."

During the plea proceedings, the Assistant United States Attorney described each robbery and Huff's participation in it. These facts included the elements of the counts to which Huff was pleading guilty. In each instance Huff acknowledged that the government's version of the events, including the weapons aspects, was accurate. Later, however, Huff said he did not have a gun at the Summit Bank. The judge then painstakingly reviewed the evidence and said that there was a sufficient factual basis for the plea notwithstanding Huff's denial that he had the gun. He did, however, say that if Huff wanted to withdraw the guilty plea on indictment 87–167 he could then do so. Huff's attorney then said: "[y]our honor, Mr. Huff has indicated to me that knowing those options, he'll go forth with the tendering of the plea." Judge Diamond then directly addressed Huff on the issue, who confirmed that it was his desire to adhere to the guilty pleas.

At the end of the proceedings, when the Assistant United States Attorney indicated that the motion to suppress was still pending before Judge Simmons under indictment 87–167, Huff's attorney, with Huff's personal approval, withdrew it. The judge then said: "You understand that there would be no other reconsideration of those by any other judge at this point?" Huff answered "Yes."

On September 16, 1988, Huff appeared for sentencing. At that time his attorney indicated that he had reviewed the presentence report with Huff and he had no corrections, deletions or modifications, but that Huff wished to withdraw the pleas and go to trial. He indicated that Huff wanted to litigate the issue of the voluntariness of his statements. The judge said that he would postpone the sentencing and that Huff should file a written motion to withdraw the pleas.

On September 28, 1988, Huff filed the written motion claiming that "he is legally not guilty" and indicated that he asserted "his legal innocence." He further set forth that he wanted "full litigation" of the issue of the voluntariness of his statements and "was not aware at the time of the change of plea proceeding that further and full litigation of the issue of the voluntariness of his statements would be precluded by his pleas of guilty" and that he "was not aware when he pleaded guilty that the Sentencing Guidelines do not provide for parole and defendant was not fully aware of the extent of his exposure to possible sentences under the Guidelines." The government filed a written response opposing the motion.

Judge Diamond denied the motion in a memorandum opinion of October 11, 1988. He perceived there was no "fair and just reason" to allow Huff to withdraw his plea and said that the record showed that Huff was fully advised as to all aspects of his change of plea to guilty and understood what he was doing and acted voluntarily. The judge further pointed out that Huff was not asserting his innocence. He stated that: "indeed, after his admissions of guilt under oath during the plea colloquy and the overwhelming evidence including bank surveillance photographs depicting him com-

mitting at least one of the bank robberies to which he has pled guilty, and the summary of the testimony of named eyewitnesses to both crimes furnished by the government at the plea hearing, it is difficult to understand how he could do so." He noted that Huff claimed to be not "legally guilty" but this contention was not an assertion of innocence. He said that while Huff wanted to challenge the voluntariness of his statements, he abandoned that challenge when he pleaded guilty. In any event, the judge noted that the evidence against Huff was overwhelming, even without his statements.

The judge pointed out that the guidelines had been explained when Huff pleaded guilty. Overall, he saw no reason to allow the change of plea, particularly inasmuch as it was clear that Huff's desire to withdraw the plea was not motivated by his belief that he was not guilty.

Huff was sentenced on October 21, 1988 as follows. On indictment 88–72 (the guidelines case), he was sentenced to a term of 262 months, with a four-year period of supervised release to follow. In addition, the judge imposed a special assessment of $50. On indictment 87–167 (the pre-guidelines case), he was sentenced to a concurrent term of 20 years, and was required to pay a special assessment of $50. Thus, the sentence was consistent with the plea agreement. Huff then appealed.

■ Huff's first contention is that the district court erred in denying his motions to suppress his statements because "the delay between arrest and arraignment directly affected the voluntariness" of the statements, citing 18 U.S.C. § 3501(c).[1] We decline to reach this issue. When Huff pleaded guilty he was clearly told that he was giving up his right to challenge the voluntariness of his statements. If Huff wanted to preserve his rights to challenge the validity of his statements on appeal, he should have refused to have pleaded guilty unless his plea was conditional under Fed. R.Crim.P. 11(a)(2). But he admits he did not do this. In the circumstances, his challenge to the voluntariness of his state-

ments is barred. *See Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973); *United States v. Fulford*, 825 F.2d 3, 10 (3d Cir.1987).

Huff's next contention is that the judge erred in not permitting him to withdraw his plea of guilty. We review the judge's ruling on this issue under an abuse of discretion standard. *United States v. Trott*, 779 F.2d 912, 915 (3d Cir.1985).

■ A defendant must have a fair and just reason for withdrawing a plea of guilty. We look to three factors to evaluate his motion to withdraw: (1) whether the defendant asserts his innocence; (2) whether the government would be prejudiced by his withdrawal; and (3) the strength of the defendant's reason to withdraw the plea. *Id.* Huff contends that he asserted his innocence and should have been allowed to withdraw the plea.

■ We see no abuse of discretion in the judge's ruling. The surveillance photos showed that Huff had an object which could have been a gun in his hand at the Summit Bank. When Huff said that he did not have a gun, the judge offered to allow him to plead not guilty, an offer that Huff rejected. The judge, of course, made an inquiry independent of Huff's statement to establish the factual basis for the plea. Furthermore, Huff did not deny that he had been in the bank or had committed the robbery. This, then, is simply a case in which the defendant changed his mind about his plea.

We also point out that Huff stated that he wanted to withdraw his plea to challenge the voluntariness of his statements. Yet he was well aware that he waived his right to make this challenge when he entered his plea. Furthermore, Judge Diamond had already denied a motion to suppress. Finally, we observe that Huff's statement in his motion to withdraw his plea, that he did not know that parole was unavailable under the guidelines, was clearly wrong, as this point was explained when he pleaded guilty.

---

**1.** Actually, his motion was not denied in 87–167. Rather, it was withdrawn.

Huff's final contention relates to the application of the sentencing guidelines under indictment 88–72 for the robbery at the Peoples Bank. It is undisputed that Huff's total offense level is 23 and that he is a career offender as defined in sentencing guideline § 4B1.1, which establishes offense levels for career offenders dependent on the statutory maximum for the offense involved. Here the statutory maximum was 25 years or more, and thus the career criminal offense level was 34. Guideline § 4B1.1 provides that "[i]f the offense level for a career criminal from the table below [the career criminal table] is greater than the offense level otherwise applicable, the offense level from the table below shall apply." Accordingly, it is clear that offense level 34 applies. Judge Diamond so held, and he sentenced Huff to 262 months, the minimum sentence available. Nevertheless, Huff urges that the judge erred, as he should have given him a two-level deduction for acceptance of responsibility as provided in guideline § 3E1.1.[2] Our scope of review on this guidelines construction question not involving the review of findings of fact or the exercise of discretion is plenary. *See United States v. Uca*, 867 F.2d 783, 786 (3d Cir.1989); *United States v. Ryan*, 866 F.2d 604, 610 (3d Cir.1989).

■ We reject Huff's contention. The career offender offense levels have been set in conformity with the mandate by Congress to the Sentencing Commission in 28 U.S.C. § 994(h) to "specify a sentence to a term of imprisonment at or near the maximum level" for the repeat offenders described therein. Thus, the description of the offenders in guideline § 4B1.1 essentially tracks that in 28 U.S.C. § 994(h). If we accepted Huff's position, we would undercut the policy set forth in 28 U.S.C. § 994(h) regarding the sentencing of persons described in that section.

Further, Huff's sentence was consistent with the guidelines as written. A total offense level takes into account more than the base offense level, here 18, under guideline § 2B3.1(a). Thus, in this case

Huff's ordinary total offense level included a two-level upward adjustment based on the amount of money involved, $11,203, § 2B3.1(b)(1)(C), a three-level upward adjustment because of the brandishment, display or possession of a firearm, § 2B3.1(b)(2)(C), and a two-level increase because he was a leader or organizer in the criminal activity, § 3B1.1(c). Accordingly, Huff's maximum level was 25, without taking into account his status as a career offender. He was, however, allowed the two-level downward adjustment for acceptance of responsibility in § 3E1.1. Thus, his ordinary total offense level was 23. The career offender table in § 4B1.1 was compared to that net ordinary total offense level and was applied as the level therein was greater than that otherwise applicable.

Inasmuch as the career offender table has no provision for adjustments, we would be no more entitled to give Huff a two-level reduction under § 3E1.1 than we would be permitted to increase his level by reason of any of the factors which led to the ordinary total offense level calculation of 23. Guideline § 4B1.1 makes no provision for a reduction for acceptance of responsibility but nevertheless requires that the level in the table be compared to an offense level which may take into account a two-level reduction for acceptance of responsibility. If an offense level established under the career offender table could be reduced by a two-level credit for acceptance of responsibility, in a case in which the career offender table was one level higher than the ordinary total offense level, a defendant accepting responsibility would benefit by being a career offender, as the two-level reduction would reduce his level to one level below that which would have been applicable if he had not been a career offender. We will not construe the guidelines in a manner which may lead to an absurd consequence. *See Government of Virgin Islands v. Berry*, 604 F.2d 221, 225 (3d Cir.1979).

In reaching our result, we have not overlooked the circumstance that the upward adjustments which cannot be added to the

---

**2.** The judge concluded as a matter of law that the acceptance of responsibility deduction was inapplicable. He did not rule that on the facts Huff did not accept responsibility.

level established by the § 4B1.1 table re-
late directly to the defendant's conduct in
the commission of the offense, whereas the
downward adjustment for acceptance of re-
sponsibility does not. Rather, we do not
see why that matters as the Sentencing
Commission has made no provisions for
adjustments to the § 4B1.1 table in either
event. Instead it has treated the table as
establishing net levels.

Finally, we point out that in § 4B1.3 the
Sentencing Commission has expressly pro-
vided that the § 3E1.1 decrease could be
applicable for acceptance of responsibility
by a defendant who committed an offense
as part of a pattern of criminal conduct.
The placement of this section in the same
part, Part B–Career Offenders and Crimi-
nal Livelihood, of Chapter Four, Criminal
History and Criminal Livelihood, tends to
indicate that the Commission did not intend
§ 3E1.1 to apply in cases under § 4B1.1.

The judgments of sentence of October
21, 1988, will be affirmed.