**UNITED STATES of America**

v.

**Xang SACKSITH, Defendant.**

**No. CRIM.A. 04–390–I.**

United States District Court,
E.D. Pennsylvania.

Nov. 1, 2005.

David E. Fritchey, Esquire, U.S. Attorney's Office, Philadelphia, PA, for Plaintiffs.

Edson Bostic, Esquire, Federal Defender Association, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

KATZ, Senior District Judge.

### I. FACTS

On June 10, 2004, Defendant Sacksith, a Laotian citizen who has been living in the United States since 1989, was arrested for his role in the attempted sale of approximately 10,000 ecstasy pills. Defendant was subsequently indicted on three counts: 1) conspiracy to distribute "MMDA," commonly known as ecstasy; 2) knowingly and intentionally possessing with intent to distribute and aiding and abetting the possession with intent to distribute methamphetamine and "MMDA"; and 3) committing the offense charged in Count Two within 1000 feet of a public playground.[1] On October 26, 2004, the government filed an "Information Supporting Enhanced Sentence pursuant to 21 U.S.C. § 851," which exposed Defendant to a mandatory life sentence for Counts Two and Three because he had two prior convictions for drug trafficking felonies. Despite this mandatory legal exposure, Defendant expressed his desire to enter a guilty plea so that he could accept responsibility for what he had done.

On December 6, 2004, the Court held a change of plea hearing, at which a Laotian interpreter was present to ensure Defendant was able to fully participate in the plea proceeding. The Court conducted a full colloquy, including a thorough explanation of the factual basis for the charges, Defendant's rights, and the mandatory legal exposure he faced by pleading guilty. Throughout the colloquy, Defendant remained steadfast in his desire to plead guilty. The Court found that Defendant was competent to plead, that he understood his rights and mandatory legal exposure and that the plea was voluntary. For those reasons, the Court accepted Defendant's plea and scheduled sentencing for October 20, 2005.

Several weeks before sentencing, however, Defendant filed a motion to withdraw his plea on the grounds that the plea was not knowing and voluntary. The Court has held an evidentiary hearing.

### II. DISCUSSION

The Court shall grant a defendant's motion to withdraw a plea if "the defendant can show a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11. "The burden of demonstrating a 'fair and just' reason falls on the defendant, and that burden is substantial." *United States v. Jones,* 336 F.3d 245, 252 (3d Cir.2003). Here, Defendant does not meet that burden.

The Court examines three factors when determining whether Defendant has a "fair and just" reason for withdrawing his plea: 1) "whether the defendant asserts his innocence"; 2) "the strength of the defendant's reason to withdraw the plea"; and 3) "whether the government would be prejudiced by his withdrawal." *United States v. Huff,* 873 F.2d 709, 712 (3d Cir.1989)

### A. An Assertion of Innocence by Defendant

Although an assertion of innocence would weigh in favor of granting Defendant's motion to withdraw his plea, the facts on the record do not support the

---

1. The indictment was subsequently superceded on December 1, 2004, but was not materially altered.

conclusion that Defendant is innocent of the crimes charged. "Assertions of innocence must be buttressed by facts in the record that support a claimed defense." *United States v. Brown*, 250 F.3d 811, 818 (quoting *United States v. Salgado–Ocampo*, 159 F.3d 322, 326 (7th Cir.1998)).

In this case, Defendant admitted guilt to the charges numerous times during the plea hearing. *See e.g.* Plea Hearing Transcript at 19 ("I did make a phone call and brought friends to meet other people."). Additionally, Defendant adopted as accurate the Government's summary of the evidence against him, which included all elements necessary to convict Defendant of all three counts, including the identity and weight of the controlled substance and the location of the attempted sale.

> **Court:** Did you hear the summary that [the prosecutor] said.
> **Defendant:** Yes, I did ˙hear what he said.
> **Court:** Do you agree with it.
> **Defendant:** Yes, that's what happened that day. That's how it happened.

Plea Hearing Transcript at 31. Defendant never credibly disputes that his criminal actions satisfy all the elements necessary for conviction of the three counts. Although he does attempt to minimize his role in the offense by claiming he never touched the drugs, that is not an assertion of innocence. *See Holbrook v. Folino*, No. 03–6841, 2005 WL 469589, at * 6 (E.D.Pa. Feb. 28, 2005)(holding that Petitioner's argument that "he played a minor role in the substantive offense also does not prove actual innocence"). Even if Defendant did not touch the drugs, he was at least in joint constructive possession of the drugs, and by helping to broker the drug deal, he aided and abetted his co-felons in the attempted drug sale. *See United States v. Martorano*, 709 F.2d 863, 866 (3d Cir.1983)("Constructive possession may be found if the evidence shows that the defendant was knowingly in a position, or had the right to exercise dominion and control of the drug either personally or through others."). As such, he did not identify adequate facts to support a claim of actual innocence.

**B. Strength of Defendant's Reason to Withdraw the Plea**

Defendant avers that the his plea was "not supported by a full understanding of the nature of the proceeding . . . or ˌthe severest consequences" of the plea as a result of his limited speaking ability in the English language. Defendant's Motion to Withdraw Guilty Plea at 2. The record, however, does not support Defendant's claim.

A review of the record demonstrates that Defendant understood the nature of the proceeding, despite his assertion to the contrary. The Court conducted a thorough colloquy as prescribed by Federal Rule of Criminal Procedure 11 in order to ensure that Defendant's plea was knowing, voluntary and intelligent. *See* FED. R. CRIM. P 11; *see also United States v. Jasper*, 481 F.2d 976, 978 (3d Cir. 1973)("Rule 11 is designed to assure that a defendant who pleads guilty does so voluntarily, knowingly and intelligently.").

Defendant's answers during the plea colloquy were responsive and coherent. *See* Plea Hearing Transcript; *United States v. Nostratis*, 321 F.3d 1206, 1209 (9th Cir.2003)(stating that the defendant's coherent answers at guilty plea hearing demonstrated the defendant understood English well enough to understand the plea hearing proceedings even though no interpreter was present).

Additionally, the presence of an interpreter, who was available to assist Defendant, belies Defendant's claims of

confusion regarding the plea hearing. Defendant has not claimed that he was unable to communicate with the interpreter or that the interpreter was incompetent. As well, Defendant was able to understand the advice of his lawyer; his attorney stated on the record that he was able to adequately communicate with Defendant in English. *See* Plea Hearing Transcript at 4. Therefore, the record does not support Defendant's claim that he did not understand the nature of the proceeding.

Furthermore, the record does not support Defendant's claim that he was "not aware of the severest of consequences" of pleading guilty. Evidence that a defendant did not understand the penalty he faced might be sufficient to demonstrate the plea was not knowing and voluntary. *See* FED. R. CRIM.P 11(b)(1)(H)(requiring the Court to inform Defendant of any mandatory minimum penalty). Here, however, Defendant was fully aware of his exposure to mandatory minimum life imprisonment. He stated at the change of plea hearing that his attorney had repeatedly advised him that he would receive a mandatory life sentence if he failed to cooperate, advice which the Court explained was accurate.

> **Court:** Have you had ample opportunity to discuss your case with your attorney?
>
> **Defendant:** Well, we talked. All he told me, I'll get life if I don't cooperate and all of that. But to tell people I know what I did was wrong. I'll take full responsibility for that.
>
> **Court:** Have you had enough time to talk to him about that, that's his advice, that's the accurate advice, have you had enough time to talk about that?

> **Defendant:** That's the only advice, I get mandatory life, he keeps telling me.
>
> **Court:** That is sound legal advice, are you satisfied with his representation of your best interests, assuming, as I am going to tell you, that is sound legal advice.
>
> **Defendant:** I say I know what I did was wrong. I leave it in your hands, your honor.

Plea Hearing Transcript at 14.[2] Furthermore, Defendant told the Court that he understood the maximum exposure he faced, after the Court explicitly explained to Defendant that by pleading guilty to Counts Two and Three that he faced a mandatory sentence of life imprisonment.

> **Court:** On counts 2 and 3 which merge, there's a mandatory minimum of life imprisonment, $8,000,000 fine and $100 special assessment. Do you understand that's the exposure if you plead guilty to counts one, two and three?
>
> **Defendant:** Yes, your Honor.

Plea Hearing Transcript at 20. In addition, the Government fully informed the Defendant that cooperating in the government's investigation was the only way that he could avoid a life sentence. The Defendant, however, refused that opportunity.

> **Government:** While at times, [Defendant] has flirted with the idea of cooperating, he hasn't been able to bring himself to do so, for reasons best known to him, which he expresses in terms of generalized fear; that there's no constitutional or statutory right to cooperate. The Defendant has to summon the will within himself, not only does he want to cooperate but be productive. The pro-

---

**2.** In the two months following his guilty plea Defendant sent two letters to the Court alleging that his attorney tricked him into pleading guilty by telling him that he would receive a sentence of between 10–12½ years. Defen-

dant no longer makes that allegation. In any event, Defendant's statement at the plea hearing makes clear the untruth of those allegations.

ductivity is frequently something of timeliness as well, even if he changed his mind at a later point, decided to cooperate, there is certainly no assurance that would be effective in getting the kinds of departure motions that he might hope to obtain simply because of the course of events or whatever the quality that the cooperation was of, that he offered. Mr. Bostic has explained the realities of [Defendant's] situation to him very clearly. I have been there when he did it. I also explained the realities. I think he fully understands them. I do not think he is in any way mentally incompetent or mentally impaired. I think there are reasons or factors that in his mind justify his fears and if he chooses not to share those with use, it does not mean they are not realistic and valid to his way of thinking.

Plea Hearing Transcript at 6–7. Thus, the record shows that Defendant understood the severity of the mandatory legal exposure he faced.

The Court is not persuaded by former counsel for Defendant Mr. Bostic's testimony at the November 1, 2005 evidentiary hearing that his client's plea was not knowing and voluntary. Mr. Bostic's testimony is undermined by his own words at the December 6, 2004 plea hearing.

> Court: Are counsel satisfied that the willingness to plead guilty is voluntary, not based on any plea agreement whatsoever, made with a full understanding by the Defendant of the nature of the charges, of the penalty provided by law, of his legal rights to contest the charges and that there is a factual basis for the plea of guilty?
>
> Government Counsel: I am your honor.
>
> Mr. Bostic: Your Honor, I am not. Mr. Sacksith did not answer one particular question to the Court, whether or not he

was satisfied with counsel's representation thus far. I ask that he be permitted to answer that, *so that I can answer this Court's question in the affirmative.* (emphasis added)

> Court: Are you satisfied with this lawyers representation of your best interests?
>
> Defendant: I mean like you say, your Honor, he cannot help me. Who else can help me? I know what I did.

Plea Hearing Transcript at 14 (emphasis added). From the transcript it is clear the only reservation Mr. Bostic expressed was that his client might not be satisfied with representation. Thus, Mr. Bostic's testimony at the evidentiary hearing does not persuade this Court that Defendant did not understand the plea proceedings.

In summary, Defendant's decision to plead guilty to charges that expose him to a mandatory life sentence may appear illogical; nonetheless, his decision was knowing and voluntary. Defendant has not presented any evidence either in his motion or at the November 1, 2005 evidentiary hearing that would cause this Court to question its findings on December 6, 2004 that "[t]he Defendant is an intelligent person" who understands "the charges, his legal rights" and "the legal mandatory exposure." Plea Hearing Transcript at 32.

## C. Prejudice to the Government

In this case the Court need not determine whether the government has met the burden of demonstrating prejudice because Defendant has not provided the Court with a sufficient reason for allowing withdrawal. *See United States v. Martinez,* 785 F.2d 111, 116 (3d. Cir.1986)(holding that the government is not required to show prejudice when a defendant has not demonstrated a fair and just reason for allowing a withdrawal).

## III.  CONCLUSION

After consideration of Defendant's motion and a full hearing, the Court finds that Defendant has not demonstrated that he was innocent of the crimes charged nor that he did not understand the full implications of the change of plea hearing.

As a final matter, the Court notes that it still may be possible for Defendant to avoid a life sentence.  See FED R. CRIM. P. 35(b)(allowing the court to reduce a defendant's sentence based on his substantial assistance in investigating or prosecuting another person upon motion of the government within a year of sentencing).  The Government acknowledged this possibility at the Change of Plea Hearing.

> **Government**. I would just like to advise the defendant for the record that if he changes his mind and wishes to cooperate, it may still be possible for him to cooperate.  Although we certainly make no promises to that effect, even after he were to be sentenced.  Assuming that he were not to cooperate, and would receive the mandatory life sentence, as a result of this being a drug conviction, after two prior felony drug convictions, which I think everyone here acknowledges, that even after sentencing, there would be a possibility for him to cooperate, pursuant to the provisions of Rule 35.  So in effect, he does have a possibility of escaping a life sentence here, but it will have to be done as a product of his decision and his forming a willingness to attempt to cooperate and then succeed in that cooperation not because of the operation of the law without cooperation.

Plea Hearing Transcript at 34–35.  For these reasons, the Court holds there is no "fair and just" reason for the allowing Defendant to withdraw his plea.  An appropriate order follows.

AND NOW, this 1st day of November, 2005, upon consideration of the Defendant's Motion to Withdraw Guilty Plea of Defendant, and the Government's response thereto, as well as, an evidentiary hearing on the merits, it is **ORDERED** that Defendant's Motion is **DENIED**.