

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-21-2007

# USA v. Sacksith

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4893

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Sacksith" (2007). *2007 Decisions.* Paper 407.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/407

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4893
_____

UNITED STATES OF AMERICA

vs.

XANG SACKSITH
a/k/a "T"

Xang Sacksith,
                    Appellant.
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(Crim. No. 04-00390)
District Judge: Honorable Marvin Katz
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 20, 2007
_____

Before: SLOVITER, SMITH and GARTH, Circuit Judges,

(Opinion Filed: September 21, 2007)
_____

OPINION
_____

GARTH, <u>Circuit</u> <u>Judge</u>:

Appellant Xang Sacksith appeals from an order of the district court, dated November 1, 2005, denying his motion to withdraw his guilty plea on federal drug charges that, because of Sacksith's two prior state drug crime convictions, carried a mandatory minimum sentence of life imprisonment. We will affirm.

I.

On July 7, 2004, a grand jury returned a three-count indictment charging Sacksith with conspiracy to distribute MDMA, in violation of 21 U.S.C. § 846; possession with intent to distribute MDMA and methamphetamine and aiding and abetting, in violation of 21 U.S.C. § 846(a)(1) and 18 U.S.C. § 2; and possession with intent to distribute MDMA and methamphetamine and aiding and abetting the same within a protected area, in violation of 21 U.S.C. § 860(a) and 18 U.S.C. § 2.

On October 26, 2004, the government filed an "Information Supporting Enhanced Sentence" pursuant to 21 U.S.C. § 851, providing notice that, if convicted, Sacksith would be subject to increased punishment as a result of his two prior felony drug convictions in Pennsylvania. In fact, as a result of these prior convictions, Sacksith was placed on notice that he was subject to a mandatory *minimum* sentence of *life imprisonment* if convicted. <u>See</u> 21 U.S.C. § 841(b)(1)(A) ("If any person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release.").

On November 17, 2004, Sacksith's court appointed attorney, Edson A. Bostic, filed

a motion to withdraw as counsel. At a November 30, 2004 hearing on this motion, Bostic stated that he wished to be relieved because Sacksith appeared to not "fully appreciate or accept the legal advice of counsel." A49. In particular, Bostic stated that Sacksith wanted to plead guilty to the charges in the indictment, but nevertheless refused to heed Bostic's advice to cooperate with the government – which Bostic counseled was the only way to avoid the mandatory life sentence. Bostic described, quite vividly, that such a course of action was "akin to a death sentence, in the sense that [Sacksith] will die in jail once convicted of this case unless he takes the only avenue I believe available to him to cooperate . . ." A50.

Bostic assured the district court that he had no trouble communicating with Sacksith, a native Laotian, in English, but that he was simply not able "to get him to see the light" and cooperate. A51. The district court denied Bostic's motion to withdraw, finding that "[t]here is nothing that a new attorney could add to what [Bostic] has done with regard to the case." A58.

## II.

On December 6, 2004, Sacksith appeared in the district court to enter his guilty plea. Prior to the plea colloquy, Bostic renewed his motion to withdraw and have new counsel appointed. Bostic restated his concern that Sacksith's continued refusal to follow Bostic's advice to cooperate with the government – or to at least explain why he would not cooperate – was "because the level of trust, I assume is not there." A63. Bostic asked that in light of the severity of the mandatory life sentence the court should give Sacksith the opportunity to consult with other counsel." A64. The district court then asked Sacksith if he intended to

proceed with his guilty plea. Sacksith replied: "I leave everything in your hands, you judge it, your honor. I ask for mercy and pray for one day I will make it." A70.

The district court then proceeded to the plea colloquy. The court asked Sacksith if he had "ample opportunity" to discuss his case with his attorney. The following colloquy ensued:

> THE DEFENDANT: Well, we have talked. *All he told me, I'll get life if I don't cooperate* and all of that. But to tell people I know what I did was wrong. I'll take full responsibility for it.
> THE COURT: Have you had enough time to talk with him about that, that's his advice, *that's the accurate advice*, have you had enough time to talk about it?
> THE DEFENDANT: *That's the only advice, I get mandatory life, he keeps telling me.*
> THE COURT: *That is sound legal advice*, are you satisfied with his representation of your best interests, *assuming, as I am going to tell you, that is sound legal advice*?
> THE DEFENDANT: I say I know what I did was wrong. I leave it in your hands your honor.

A73 (emphases added).

After the district court completed its explanation of the elements the government would need to prove to establish his guilt on the three charges, Sacksith stated: "But your Honor. I just want you to know that I never had any possession, touched drugs. I did make a phone call and brought friends to meet other people. That's all I did." A78.

The district court then explicitly advised Sacksith that by pleading guilty he would receive a mandatory sentence of life imprisonment:

> THE COURT: Now, let me explain what the penalty exposure is, if you plead guilty on count one. The penalty exposure is 30 years imprisonment, mandatory minimum of six years supervised release, a $2,000,000 fine, $100 special assessment. *On counts 2 and 3 which merge, there's a mandatory minimum of life imprisonment*, $8,000,000 fine and $100 special assessment. Do you understand that's the exposure, if you plead guilty to counts one, two and three?
>
> THE DEFENDANT: Yes, your honor.

A78-79 (emphasis added).

At the district court's request, the government then summarized its evidence as follows. In June 2004, a cooperating witness arranged to buy 10,000 ecstacy pills from Sacksith. Sacksith obtained sample pills from two of his co-defendants, Thanh Nguyen and Toan Kim, and provided them to the cooperating witness, who subsequently agreed to purchase 10,000 pills for $65,000. On June 10, 2004, Nguyen, Kim, and a third co-defendant, Duong Vu, drove to South Philadelphia with a backpack containing the 10,000 pills. They picked up Sacksith and drove together a short distance to a donut shop at 330 Oregon Avenue, where Sacksith and Vu exited the vehicle and met the cooperating witness. Vu carried the backpack containing the pills. Once inside the donut shop, Vu and the cooperating witness entered the men's room where Vu showed the drugs to the cooperating witness. The cooperating witness came out and signaled DEA agents who arrested Sacksith and Vu.

Laboratory results on the seized drugs showed that the 10,000 pills contained a total

of 79.5 grams of pure methamphetamine and 462.6 grams of pure ecstacy.  The donut shop

where the drug transaction was to occur is located within 1,000 feet of Our Lady of Mount

Carmel Catholic School and the Murphy Recreation Center, a public playground.  Sacksith

was to receive $10,000 of the total $65,000 purchase price for arranging the transaction.

The district court then asked Sacksith if he agreed with the prosecutor's summary.

The following interchange followed:

> THE COURT: Do you agree with the prosecutor's summary of what you did?
> THE DEFENDANT: Yes.  Some of them.  Some of them did.  All I did was make a phone call, your Honor.
> THE COURT: Is there anything he said that was incorrect?
> THE DEFENDANT: I never seen nothing.  I don't know what's going on.
> THE COURT: Did you hear the prosecutor's summary, did you listen to that?  Would you like to hear it again?
> THE DEFENDANT: I don't know your Honor.
> THE COURT: Did you hear the summary that he said?
> THE DEFENDANT: Yes, I did hear what he said.
> THE COURT: Do you agree with it?
> THE DEFENDANT: Yes, that's what happened that day.  That's how it happened.

A89-90.

Sacksith then pled guilty on all three counts.[1]

---

[1]Sacksith pled guilty to a superseding indictment that had been returned on December 1, 2004.  The superseding indictment did not materially alter the charges against Sacksith contained in the original July 7, 2004 indictment.

## III.

On October 6, 2005, Sacksith, now represented by new appointed counsel,[2] John J. Griffin, filed a motion to withdraw his guilty plea, claiming that he did not understand the severity of the consequences of pleading guilty. On November 1, 2005, the district court conducted a hearing on Sacksith's motion. Bostic testified at the hearing that he had explained to Sacksith "time and time again [that] the court had *no discretion* once the government filed [a notice under 21 U.S.C. § 851, which] made the case a *mandatory life case upon conviction.*" A100 (emphases added); see also A111 ("I told Mr. Sacksith . . . in all my meetings with him, once the government had filed the notice under 841 and 851 that he was – he would get a mandatory life sentence."); A113 ("Q: He heard not only from you, as his attorney, he also heard from me as the prosecutor and from the agents who arrested him, that he was facing mandatory life imprisonment . . . ? A: That is correct.").

Bostic testified that, despite his clear and explicit advice to Sacksith that the district court would have no discretion to exercise leniency and would be *required* to impose a life sentence, Sacksith told him that "he would be seeking mercy from the court in terms of the sentence to be imposed." A100. Based upon this statement, Bostic "felt [Sacksith] did not

---

[2]Bostic was replaced as Sacksith's counsel as a result of two letters Sacksith had sent to the district court in January 2005, claiming that Bostic had misled him into entering his guilty plea by advising him that, as a result of accepting responsibility for his crimes, he would receive a sentence of no more than 10-12 years' imprisonment. Sacksith did not raise these assertions – which Bostic adamantly denies – either before the district court or on this appeal. Current counsel, John J. Griffin, entered his appearance for Sacksith on March 23, 2005.

understand the consequences of his guilty plea." A104. Bostic reiterated, however, that he was able to communicate in English with Sacksith, A106, and that there was "no ambiguity" in his repeated explanations to Sacksith that pleading guilty would result in a mandatory sentence of life imprisonment. A114.

The district court then heard arguments on Sacksith's motion to withdraw his plea. Sacksith argued that, while he could not "claim total innocence," the court should find his statement "I never had any possession, touched drugs" together with what he described as his "equivoca[tion]" before ultimately confirming the government's proffer of evidence at the plea hearing as "a crude . . . assertion to some degree of innocence of Mr. Sacksith." A132. Sacksith then urged that his failure to understand the "tremendous gravamen of the situation" was a compelling reason to allow him to withdraw his guilty plea. A135.

The district court then denied the motion, stating:

> It seems to me, clear to me that the defendant understood the consequences of his guilty plea. It couldn't have been made more clear by his other attorney, and it couldn't have been made more clear in the colloquy and I think that the game playing of not understanding what counsel argued or something of that kind, and saying that counsel promised him some lower sentence, which was completely false, is indicative of the fact that the defendant is simply trying to play the system, that the motion for withdrawal of the guilty plea is denied.

A148.[3]

---

[3]On the same day, the court issued a formal opinion denying Sacksith's motion to withdraw.

The court then imposed a sentence of life imprisonment.

IV.

We review the district court's denial of a motion to withdraw a guilty plea for abuse of discretion. United States v. Martinez, 785 F.2d 111, 113 (3d Cir. 1986); United States v. Trott, 779 F.2d 912, 915 (3d Cir. 1985); Government of Virgin Islands v. Berry, 631 F.2d 214, 219 (3d Cir. 1980).

"A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). This court looks to three factors to evaluate a motion to withdraw: (1) whether the defendant asserts his innocence; (2) the strength of the defendant's reason to withdraw the plea; and (3) whether the government would be prejudiced by the withdrawal. United States v. Brown, 250 F.3d 811, 815 (3d Cir. 2001); United States v. Huff, 873 F.2d 709, 711 (3d Cir. 1989); United States v. Crowley, 529 F.2d 1066, 1071 (3d Cir. 1976). The burden of demonstrating a "fair and just" reason for withdrawing the plea falls on the defendant, and that burden is substantial. United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2003) (citing United States v. Hyde, 520 U.S. 670, 676-77 (1997)).

Under the three-pronged analysis set forth in Brown, Huff, and Crowley, "[a] shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." Jones, 979 F.2d at 318.

The first factor – assertion of innocence – requires more than just a bald assertion of innocence. "Assertions of innocence must be buttressed by facts in the record that support a claimed defense." Brown, 250 F.3d at 818 (quoting United States v. Salgado-Ocampo, 159 F.3d 322, 326 (7th Cir. 1998)). Furthermore, a defendant seeking to withdraw a guilty plea must, in addition to reasserting his innocence, "give sufficient reasons to explain why contradictory positions were taken before the district court." Jones, 979 F.2d at 318.

As to the second factor, this court has held that, unless rising to the level of ineffective assistance of counsel, failure to correctly anticipate the sentence ultimately imposed is not a sufficient reason to withdraw a plea. See Harris, 44 F.3d at 1210 (affirming denial of a motion to withdraw a guilty plea because the defendant simply "had a change of heart after reading the presentence report and contemplating the possible sentence."); Huff, 873 F.2d at 711 (affirming denial of a motion to withdraw despite the defendant's claim that he "was not aware when he pleaded guilty that the Sentencing Guidelines do not provide for parole and . . . was not fully aware of the extent of his exposure to possible sentences under the Guidelines.").

Finally, as to the third factor, we have held that where the defendant has failed to demonstrate that the first two factors support withdrawal, the government need not show prejudice. United States v. Jones, 336 F.3d 245, 255 (3d Cir. 2003); United States v. Harris, 44 F.3d 1206, 1210 (3d Cir. 1995).

V.

The district court properly exercised its discretion to deny Sacksith's motion to

withdraw his plea. Sacksith has not satisfied *any* of the three factors set forth in <u>Brown</u> and therefore has failed to provide a "fair and just" reason to justify withdrawal of his plea. <u>See</u> Fed. R. Crim. P. 11(d)(2)(B).

First, Sacksith has not meaningfully asserted his innocence. At the plea hearing, Sacksith confirmed the truth of the government's account that he arranged for the sale of a large quantity of methamphetamine and ecstacy pills and that he accompanied the sellers in a car, with the drugs, to the donut shop where the sale was to take place. Sacksith claims that his statement at the plea hearing that "I never had any possession, touched drugs" was an assertion of innocence. But Sacksith's denial of having *physical* possession of the drugs does not amount to a claim of innocence. Indeed, Sacksith's admissions during the plea hearing – i.e., that he accompanied his co-defendants in a car with the drugs to the arranged location – make clear that he was in *constructive* possession of the drugs, and that, in any event, by arranging the drug deal, he was guilty of aiding and abetting the attempted drug sale. <u>See</u>, e.g., <u>United States v. Powell</u>, 113 F.3d 464, 467 (3d Cir. 1997) (upholding conviction for aiding and abetting drug sales where the defendant "accompanied his brother" to the drug sales, "drove or rode in the vehicle transporting the cocaine," and "was a look-out during the drug transaction").

Nor was Sacksith "equivocal" in admitting to his conduct. In response to the government's proffer of what it was prepared to prove at trial, Sacksith issued no denial but rather responded "Yes, that's what happened that day. That's how it happened." Finally,

Sacksith has not provided any facts either to the district court or in this appeal to suggest that he is innocent of the crimes alleged in the indictment.[4] Brown, 250 F.3d at 818

Sacksith also has not provided a strong reason to permit the withdrawal of his plea. Sacksith contends that he did not understand that the sentencing court could not exercise leniency or "mercy" to impose a sentence less than life imprisonment.[5] But, contrary to this contention, the record amply demonstrates that Sacksith was repeatedly advised – and understood – that the life sentence penalty for his crimes was *mandatory*.

At the November 30, 2004 hearing on Bostic's motion to withdraw as counsel, at which Sacksith was present, Bostic repeatedly stated that Sacksith was facing a mandatory life sentence if convicted. A47 ("[T]hose two priors . . . require[] this court . . . to impose a

---

[4]Sacksith contends that his admissions at the plea hearing do not constitute criminal conspiracy under the reasoning of United States v. Cartwright, 359 F.3d 281 (3d Cir. 2004); United States v. Idowu, 157 F.3d 265 (3d Cir. 1998) and United States v. Wexler, 838 F.2d 88 (3d Cir. 1988). These cases all involved defendants who claimed to be unaware of the *particular* unlawful objective of the conspiracy even while admitting to knowledge that it involved some *general* illegal conduct. Cartwright, Idowu, and Wexler stand for the proposition that "even in situations where the defendant knew that he was engaged in illicit activity, and knew that 'some form of contraband' was involved in the scheme in which he was participating, the government is obliged to prove beyond a reasonable doubt that the defendant had knowledge of the particular illegal objective contemplated by the conspiracy. Cartwright, 359 F.3d at 287 (citing Idowu, 157 F.3d at 266-67). These cases are inapposite because Sacksith never denied – and indeed does not now deny – that he knew the specific object of the present conspiracy – i.e., the sale of 10,000 MDMA and methamphetamine pills for $65,000.

[5]To the extent Sacksith claims that his lack of understanding of the mandatory nature of the life sentence was a result of his poor English comprehension, his contention is without merit. Bostic testified several times that he never had any difficulty communicating with Sacksith in English. See A49, 106.

-12-

mandatory life sentence on him. I have explained this to Mr. Sacksith in detail."); A48 ("[H]e is looking at mandatory life if convicted."); A50 ("This is akin to a death sentence in the sense he will die in jail once convicted."); A53 ("Absent [cooperation] the court is powerless to depart.").

And Bostic testified at the hearing on Sacksith's motion to withdraw his plea that he repeatedly and unambiguously advised Sacksith that pleading guilty would result in a mandatory life sentence:

> I told Mr. Sacksith . . . in all my meetings with him, once the government had filed the notice under 841 and 851, that he was – he would get a mandatory life sentence.
> . . . .
> I told him that many times. I reiterated during the guilty plea colloquy that in essence it made no sense to plead guilty to the offense because he would be pleading guilty to a mandatory life sentence.

A111-12.

At the plea hearing, Sacksith *himself* acknowledged that his guilty plea would result in a mandatory sentence of life imprisonment. In response to the district court's inquiry whether Sacksith had sufficient opportunity to consult with counsel, Sacksith replied "All he told me, I'll get life if I don't cooperate and all of that," and "That's the only advice, I get mandatory life, he keeps telling me." A73. The district court confirmed "That is sound legal advice." Id. The district court then specifically advised Sacksith that the punishment for counts two and three of the indictment would be mandatory life imprisonment: "On counts

-13-

2 and 3 which merge, there's a mandatory minimum of life imprisonment. . . " A79. Nevertheless, Sacksith pled guilty.

Sacksith cites one time during the plea colloquy when he asked the court for mercy and two other times where he states "I leave it in your hands your Honor" as evidence that he nonetheless subjectively believed the district court had some sentencing discretion. See A70, 82, 91. But, in light of both Bostic's and the district court's repeated advice to the contrary – and Sacksith's own recognition that "I'll get life if I don't cooperate" – Sacksith had *no rational basis* for this belief. Accordingly, Sacksith has failed to provide an adequate, let alone strong reason to permit him to withdraw his plea. Huff, 873 F.2d at 711.

Because Sacksith has failed to meet his burden of asserting innocence, and has not proffered any strong reasons for permitting withdrawal of his plea, we need not consider prejudice to the government. Jones, 336 F.3d at 255. Sacksith has therefore failed to "show a fair and just reason for requesting the withdrawal," Fed. R. Crim. P. 11(d)(2)(B), and his motion was properly denied.

## VI.

We will affirm the judgment of the district court.