NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-3345

_____

UNITED STATES OF AMERICA

v.

PAUL SURINE,

Appellant

_____

On Appeal from United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4:07-cr-00304)
District Judge: Honorable James F. McClure, Jr.

_____

Submitted Under Third Circuit LAR 34.1(a)
February 5, 2010

Before: McKEE, HARDIMAN, *Circuit Judges*, and DAVIS*, *District Judge*

(Filed: April 13, 2010)

_____

---

The Honorable Legrome D. Davis, District Judge for the United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

_____

DAVIS, *District Judge*

In this appeal, Paul Surine challenges the denial of his motions to withdraw his guilty plea and the procedural and substantive reasonableness of his sentence. For the reasons that follow, we affirm the District Court's judgment.

I.

The District Court had jurisdiction over this matter pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Because we write exclusively for the parties, we will address only the facts and procedural history relevant to our resolution of the issues raised in this appeal.

On May 30, 2008, pursuant to a written plea agreement, Surine entered a plea to Count One of the Superceding Indictment charging conspiracy to distribute and possess with intent to distribute 50 or more grams of cocaine base in violation of 21 U.S.C. § 846. Surine's pro se motion to withdraw his guilty plea was denied as having no merit on September 25, 2008.[2] On March 26, 2009, Surine filed a counseled motion to withdraw his guilty plea which the District Court denied by written order on May 12, 2009. On

_____

[2]On September 9, 2008, the District Court denied Surine's pro se motion to withdraw his guilty plea without prejudice because Surine was represented by counsel but filed the motion on his own.

August 5, 2009, Surine was sentenced to 360 months incarceration, to be followed by five years supervised release, and a special assessment of $100.00 was imposed.

II.

A.

We turn first to Surine's contention that the District Court erred when it refused to permit the withdrawal of his guilty plea.

We review the District Court's denial of a motion for withdrawal of a guilty plea for an abuse of discretion. *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001). Once a guilty plea has been accepted, a defendant must present a fair and just reason to be permitted to withdraw a plea of guilty. Fed. R. Crim. P. 11(d)(2)(B). The burden on the defendant to demonstrate a fair and just reason for withdrawal is substantial. *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003) (citing *United States v. Hyde*, 520 U.S. 670, 676-77 (1997), and *United States v. Isaac*, 141 F.3d 477, 485 (3d Cir. 1998)). In evaluating a motion to withdraw, we look to three factors: (1) whether the defendant asserts his innocence; (2) the strength of the defendant's reason for withdrawal of the plea; and (3) whether the government would be prejudiced by the withdrawal. *Id.* (citing *Brown*, 250 F.3d at 815, and *United States v. Huff*, 873 F.2d 709, 711 (3d Cir. 1989)). Moreover, "[b]ald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea" because "[a]ssertions of innocence must be buttressed by facts

3

in the record that support the claimed defense." *Id.* at 252-53 (quoting *Brown*, 250 F.3d at 818). In addition, the defendant "must . . . give sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea . . . ." *Id.* at 253 (quoting *United States v. Jones*, 979 F.2d 317, 318 (3d Cir. 1992)).

Surine's proof as to the first element of the standard fails because he did not assert his factual innocence in the lower court. As the District Court wrote in its May 12, 2009 order denying the second motion to withdraw,

> Paul Surine is not asserting his innocence. In fact, the court has several letters from Surine stating the opposite. In a handwritten letter from Surine dated August 8, 2008, Surine states "At the time I comitted [sic] these crimes..." (Rec. Doc. No. 170.) In a letter signed by Surine, included in the presentence report, Surine writes, "I greatly regret having committed this terrible crime," and "Again, I wish to express my sincere regret and remorse for having committed these crimes and taken up your time as well as the time of the prosecutor and attorneys in my case."

(App. 24-25.) Moreover, at his guilty plea hearing, Surine admitted that for a period of twenty-one months, he and others used his residence as a primary location for receiving cocaine and crack from suppliers in New York, processing the cocaine into crack, helping customers process cocaine into crack, and distributing the cocaine and crack.

Thus, it is clear that Surine has not denied participation in the conspiracy to distribute crack cocaine, nor has he denied that he personally distributed crack cocaine. Furthermore, he offers no explanation for the extensive admissions of guilt made at the plea hearing. Instead, his position before the District Court and on appeal is an

4

unsupported assertion that the search warrant was defective, and, since prior counsel did not file a motion to suppress evidence, he was therefore deprived of a defense and entered an involuntary plea. We find no error in the District Court's determination that Surine failed to advance a meaningful claim of factual innocence. *See Brown*, 250 F.3d at 818 (rejecting assertion of innocence where defendant did not deny she committed the crime); *Huff*, 873 F.2d at 712 (same).

Next, we address Surine's reason for withdrawal, which is based on his contention that he did not understand the plea agreement or the District Court's questions during the plea colloquy. The record belies these claims.

Our independent review of the plea hearing transcript reveals that the Court carefully discussed the material terms of the plea agreement with Surine in an effort to ensure that Surine understood the terms of the agreement. At the hearing, Surine stated under oath that his lawyer explained the guilty plea to him at length and to his satisfaction, and that he fully understood the terms and conditions of the plea agreement. Moreover, at the hearing, the District Court and the prosecutor explained the import of certain provisions of the agreement and verified Surine's understanding of the terms of the plea. These explanations included the charges to which Surine was pleading guilty, the factual basis for these charges, the maximum and minimum penalties Surine would face, the advisory nature of the guidelines, and the fact that Surine could not withdraw his plea merely because he may be dissatisfied with his sentence. Surine unequivocally and

5

continually agreed throughout the hearing that he understood the provisions of the plea agreement, and we find no evidence in the record to support Surine's claim that he did not understand the terms of the agreement or the District Court's questions of him.

Because Surine has not asserted his factual innocence and has failed to set forth a sufficient reason to permit withdrawal, we will affirm the District Court's denial of his motions to withdraw the guilty plea.[1]

B.

Surine also appeals the length of the term of incarceration that the District Court imposed. We review a sentence for abuse of discretion by engaging in a procedural and substantive review of the sentence. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). Procedural errors include failure to accurately calculate the Guideline range, failure to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, and failure to adequately explain the chosen sentence. *Id.* (citing *Gall*, 552 U.S. at 51). We review the substantive reasonableness of a sentence based on the totality of the circumstances. *Id.* (citing *Gall*, 552 U.S. at 51). Surine raises both procedural and substantive challenges.

---

[1] The Government states that its witnesses are available to testify and that it would therefore not be prejudiced by withdrawal of the plea. However, as the first and second factors of the analysis demonstrate that Surine has not carried his substantial burden, we will affirm the District Court's ruling. *See Jones,* 336 F.3d at 255 ("[T]he Government need not show . . . prejudice when a defendant has failed to demonstrate that the other factors support a withdrawal of the plea.").

Surine's claims of procedural error relate to factual findings that the District Court made when calculating his total offense level. Applying the Drug Quantity Table set forth in Guideline § 2D1.1, the District Court assigned Surine a base offense level of 36 after finding that he distributed between 1.5 and 4.5 kilograms of crack.[2] The District Court also applied a two-level firearms enhancement pursuant to Guideline § 2D1.1(b)(1) and a four-level aggravating role enhancement pursuant to Guideline § 3B1.1(a). After adding these enhancements and applying a three-level reduction as recommended in the presentence report, the District Court calculated Surine's total offense level as 39. Surine challenges the District Court's findings as to (1) the amount of crack that he had conspired to distribute, (2) his possession of a firearm in connection with his criminal activity, and (3) his role in the conspiracy. The District Court made its findings on these issues after accepting briefing from the parties and holding a two-day evidentiary hearing.

We review the District Court's findings of fact on these issues for clear error. *United States v. Givan*, 320 F.3d 452, 463 (3d Cir. 2003) (citing *United States v. Miele*, 989 F.2d 659, 663 (3d Cir. 1993)). When sentencing a defendant, the district court need only base its determinations on the preponderance of the evidence with which it is presented. *Id.* (citing *United States v. McDowell*, 888 F.2d 285, 291 (3d Cir. 1989)). "Information used as a basis for sentencing must have 'sufficient indicia of reliability to

---

[2]The base offense level assigned by the District Court was actually less than the base offense level of 38 recommended in the presentence report, which suggested that Surine was responsible for distributing over 4.5 kilograms.

7

support its probable accuracy.'" *Id.* (quoting U.S.S.G. § 6A1.3(a)). We will examine each claim of factual error in turn.

The District Court properly estimated the amount of crack that Surine conspired to distribute and therefore used the correct quantity to determine the base offense level. According to Surine, the District Court's decision on drug quantity has no "conclusive basis" in the record because no witness testified that Surine specifically distributed between 1.5 and 4.5 kilograms of crack. Although a court may not base its calculations as to drug quantity on "mere speculation," *United States v. Collado*, 975 F.2d 985, 998 (3d Cir.1992), a court is permitted "a degree of estimation" when arriving at a specific quantity determination, *United States v. Gibbs*, 190 F.3d 188, 203 (3d Cir. 1999) (citing *United States v. Paulino*, 996 F.2d 1541, 1545 (3d Cir. 1993)). Courts may estimate drug quantity using a variety of evidentiary sources, including testimony of codefendants about the amount of drugs the defendant transported and the average amounts sold per day multiplied by the length of time sold. *Gibbs*, 190 F.3d at 204 (citations omitted). The District Court did just that when it estimated the amount of crack that Surine distributed. Based on the testimony of several witnesses, including one of Surine's sons, another coconspirator, and several customers, the District Court was able to approximate the amount of cocaine and crack that was delivered to Surine's residence, the amount of cocaine that was processed into crack, and the amount of crack that Surine sold over the length of his involvement in the conspiracy. By proceeding in this fashion, the District

8

Court used an accepted methodology for calculating drug quantity. See *Gibbs*, 190 F.3d at 204. Applying this methodology, the District Court proceeded cautiously and reached a conservative estimate when it concluded that Surine possessed with the intent to distribute between 1.5 and 4.5 kilograms of crack. We see no clear error in the drug quantity findings.

The District Court had a sufficient factual basis for its application of a two-level firearms enhancement pursuant to Guideline § 2D1.1(b)(1). Guideline § 2D1.1(b)(1) provides that a two-level increase in an offense level should be applied if "a dangerous weapon (including a firearm) was possessed" in connection with an offense involving drugs. U.S.S.G. § 2D1.1(b)(1). This enhancement "reflects the increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1, Note 3. In addition, the "adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.* "[D]efendants have rarely been able to overcome the 'clearly improbable' hurdle." *United States v. Drozdowski*, 313 F.3d 819, 822 (3d Cir. 2002). In making the "clearly improbable" determination, courts rely on a number of factors, including the type of gun involved, whether the gun was loaded, whether the gun was stored near drugs or drug paraphernalia, and whether the gun was accessible. *Id.* (citations omitted). Surine admits that firearms were present while he was involved in the conspiracy but summarily contends that it is improbable that those firearms were connected to his drug trafficking.

9

However, during the evidentiary hearing, the testimony of several witnesses established that there were firearms in Surine's mobile home at all times, that Surine used firearms to protect himself during drug transactions, that Surine on one occasion pointed a firearm at an individual who was delivering drugs, that Surine occasionally fired a gun to scare off purchasers, and that Surine traded firearms for crack. Overwhelming evidence supports the District Court's application of the two-level firearms enhancement.

With regard to Surine's last claim of factual error, we find that the District Court properly applied a four-level enhancement based on Surine's aggravating role in the conspiracy. Guideline § 3B1.1(a) provides for a four-level increase in the offense level if the defendant is an "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive . . . ." U.S.S.G. § 3B1.1(a). Factors for a district court to consider in determining whether to apply the aggravating role enhancement include the exercise of decision making authority, the nature of participation in the offense, the recruitment of accomplices, the claimed right to a larger share of the profits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. *United States v. Gricco*, 277 F.3d 339, 358 (3d Cir. 2002) (citing *United States v. Hunter*, 52 F.3d 489, 492 (3d Cir. 1995)). Surine argues that he associated with a group of users of crack but that there was no organization, or, in the alternative, that if there was an organization he was not a leader or organizer in the organization. However, based on

testimony set forth during the evidentiary hearing, the District Court identified nine participants in the criminal activity, all nine of whom were recruited by Surine and obtained crack from Surine for distribution. In addition, the testimony established that Surine made arrangements for crack to be delivered from suppliers in New York to his residence, that he directed the activities of other participants, that he had authority to approve trades of items for crack, and that he attempted to limit his exposure to criminal liability by using "gophers" to sell drugs and permitting only a small circle of individuals to deal directly with him. This testimony established that Surine played a leadership role in the conspiracy to purchase and distribute crack cocaine, and it therefore supports the District Court's application of a four-level aggravating role enhancement.

Finally, Surine challenges the substantive reasonableness of the sentence the District Court imposed. Based on a total offense level of 39 and criminal history category of III, the District Court calculated a Guideline range of 324 months to 405 months imprisonment. The Court sentenced Surine to a period of 360 months imprisonment. Surine argues that the District Court erred by not sentencing him at the low end of the Guidelines in consideration of his remorse, the failure of his criminal activities to advance his standard of living, the impact of his addiction on his activities, and his efforts undertaken in prison to rehabilitate himself.

If a sentence "falls within the broad range of possible sentences that can be considered reasonable in light of the [18 U.S.C.] § 3553(a) factors, we must affirm."

11

*United States v. Wise*, 515 F.3d 207, 218 (3d Cir. 2008). "Ultimately, '[t]he touchstone of reasonableness is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a).'" *Tomko*, 562 F.2d at 568 (quoting *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007)). The record shows that the District Court did in fact consider the factors that Surine believes entitle him to a lesser sentence. Immediately before announcing the sentence, the Court specifically considered Surine's remorse as well as the impact of continued substance abuse upon his activities, his failure to generate substantial income from drug trafficking, and his participation in substance abuse counseling programs following his confinement. However, the District Court found that a 360-month period of confinement was nonetheless necessary, and we find the District Court's conclusion to be reasonable.

As the District Court observed, the conspiracy lasted for at least twenty-one months while Surine was the leader, and at least 100 to 200 individuals purchased crack cocaine during that time. The conspiracy included the trading of firearms for crack. Surine was responsible for the drug addiction of several of his own children, and after they developed addictions, Surine used them to participate in the conspiracy. The District Court also reviewed Surine's criminal history, noting that Surine's disregard of the law began when he was 18, continued to the day of his arrest, and includes nine prior criminal convictions that were not included in calculating Surine's criminal history category of three. Finally, the Court noted one particular prior crime: a conviction of indecent assault

12

and corruption of the morals of a minor where the victim was Surine's daughter. The District Court thoughtfully considered the evidence before it and decided that a sentence in the middle of the Guideline range was appropriate based on its weighing of multiple factors. It concluded that a sentence of 360 months imprisonment was justified by the seriousness of the offense, would promote respect for the law, would provide just punishment and deterrence, and would protect the public. We find the District Court's conclusion to be reasonable, and we will therefore affirm the sentence.

## III.

For the foregoing reasons, we will affirm the District Court's judgment in all respects.