

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-22-2001

# United States v. Brown

Precedential or Non-Precedential:

Docket 00-1679

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"United States v. Brown" (2001). *2001 Decisions.* Paper 110.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/110

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 22, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-1679

THE UNITED STATES OF AMERICA,

v.

MELVINISHA BROWN,
        Appellant

APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 99-cr-00508-4)
District Judge: The Honorable Eduardo C. Robr eno

ARGUED JANUARY 23, 2001

BEFORE: NYGAARD, ALITO, and ROSENN,
Circuit Judges.

(Filed: May 22, 2001)

        Lynanne B. Wescott, Esq.
         (Argued)
        Saul Ewing, Esq.
        500 Market Street
        Centre Square West, 38th Floor
        Philadelphia, PA 19102

         Counsel for Appellant

         Walter S. Batty, Jr., Esq.
         Carol M. Sweeney, Esq. (Argued)
         Suite 1250
         Office of United States Attorney
         615 Chestnut Street
         Philadelphia, PA 19106

          Counsel for Appellee

OPINION OF THE COURT

NYGAARD, Circuit Judge.

On January 4, 2000, Appellant, Melvinisha Br own, pleaded guilty to an indictment charging her with one count of conspiracy to make false statements to a federally licensed firearms dealer, in violation of 18 U.S.C. S 373 (count one of the indictment), and one count of making false statements to a federally licensed fir earms dealer, in violation of 18 U.S.C. S 924(a)(1)(A) (count six of the indictment). The United States District Court for the Eastern District of Pennsylvania sentenced her to five years probation, including twelve months of home confinement. Brown appeals, arguing that: (1) the court erroneously rejected her motion to withdraw her guilty plea; and (2) the court erroneously refused to grant a sentence reduction pursuant to U.S.S.G. S 3B1.2 for her mitigating role in the offense. For the reasons that follow, we will affirm.

I. FACTS AND PROCEDURE

Brown and five co-conspirators were char ged with purchasing a total of nine firear ms in violation of federal statutes. Brown herself allegedly purchased two semi-automatic pistols, for which she pleaded guilty. One week before sentencing, however, she filed a motion to withdraw her guilty plea. She contended that her plea had not been knowing and voluntary because it had been based upon "inaccurate representations of available evidence." She also asserted that she was "legally innocent" because the government could not prove that she was guilty beyond a reasonable doubt.

2

In Brown's Supplemental Memorandum of Law in support of her motion to withdraw her guilty plea, she alleged that the government had failed to disclose information that she characterized as Brady or Giglio evidence. Specifically, Brown argued that the government's plea agreement with her co-defendant, Curtis Jordan, in which the government agreed to withdraw count six of the indictment, constituted exculpatory evidence that it was compelled to disclose pursuant to Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963), and Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763 (1972). According to Brown, the government agreed to drop count six against Jordan because he had an alibi defense that exonerated him on that count. She claims that her plea was motivated by the belief that Jordan's testimony would be used against her at trial. Had she been aware of the undisclosed information, she may not have pleaded guilty.

The District Court conducted a hearing to consider Brown's motion to withdraw her plea. Special AUSA Sweeney testified that she did not recall Jordan's attorney ever discussing whether Jordan had an alibi defense. J.A. at 208. She stated, "I recall not hearing the word alibi until yesterday [4/19/00] when [defense counsel's] pleading called it to my attention." Id. at 209. Instead, according to Sweeney, the government decided to drop count six against Jordan because Brown had chosen not to testify against him. She testified that, "I had never disclosed to Ms. Brown or her lawyer an intention to use Mr. Jordan as a witness, so the fact that he was not a witness was not a change in circumstance." Id. at 209-10.

The District Court denied Brown's motion to withdraw her guilty plea. It held that Brown failed to make a "colorable claim of innocence." Moreover, the court held that the government's failure to disclose its decision not to charge Jordan with count six of the indictment did not constitute a Brady or Giglio violation. The court reasoned that, given the credible testimony of the prosecutor and the absence of any contrary evidence from the defense, Brown's "Jordan alibi theory" was "sheer speculation." Relying upon Smith v. Holtz, 210 F.3d 186 (3d Cir. 2000), the court held that even if Brady was implicated, no violation had

3

occurred because Brown failed to demonstrate "a probability sufficient to undermine confidence in the outcome of this case." Thus, Brown had failed to demonstrate a fair and just reason for withdrawal of her guilty plea. She filed a motion for reconsideration, which the District Court rejected after she failed to supplement the record.

At the subsequent sentencing hearing, Brown filed a motion for a sentencing reduction pursuant to S 3B1.2 of the Guidelines. She requested a downward adjustment of four levels for her minimal participation in the offense or, at the very least, a two level downward adjustment for her minor participation. The District Court denied the requested adjustment, finding that Brown knew that others were involved in a criminal enterprise, knew of its scope, and was important to its success. As such, the court assigned Brown a total offense level of ten and a criminal history category of I. The court sentenced her to five years probation, with the first twelve months to be served in home confinement subject to electronic monitoring

II. DISCUSSION

A. Withdrawal of Plea

Brown first contends that she presented a fair and just reason for the withdrawal of her guilty plea. She asserts three primary arguments: (1) her plea was neither knowing nor voluntary because the guilty plea colloquy was misleading and deceptive; (2) the government failed to disclose exculpatory Brady information before the entry of her plea; and (3) she is legally innocent and can prevail at trial. We review the District Court's denial of Brown's motion for withdrawal of her guilty plea for an abuse of discretion. See United States v. Harris, 44 F.3d 1206, 1210 (3d Cir. 1995). However, to the extent that Brown contends that the government failed to disclose Brady information, we review the court's legal conclusions de novo and its factual findings for clear error. See United States v. Ramos, 27 F.3d 65, 67 (3d Cir. 1994).

Once accepted, a guilty plea may not automatically be withdrawn at the defendant's whim. See United States v.

4

Martinez, 785 F.2d 111 (3d Cir. 1986). Rather, a defendant must have a fair and just reason for withdrawing a plea of guilty. See FED. R. CRIM. P. 32(e). We look to three factors to evaluate a motion to withdraw: (1) whether the defendant asserts her innocence; (2) whether the gover nment would be prejudiced by the withdrawal; and (3) the strength of the defendant's reason to withdraw the plea. United States v. Huff, 873 F.2d 709, 711 (3d Cir . 1989). "A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the gover nment the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." United States v. Jones, 979 F.2d 317, 318 (3d Cir. 1992), superseded by statute on other grounds as stated in, United States v. Roberson, 194 F.3d 408, 417 (3d Cir. 1999).

We conclude that Brown has failed to pr esent a fair and just reason for withdrawing her guilty plea. First, her contention that the government misrepr esented its evidence and secretly changed its theory of the case during the plea colloquy, thus rendering her plea involuntary and uninformed, is without merit. Brown ar gues that the colloquy was misleading and defective because the Change of Plea Memorandum read into the recor d by the government differed slightly fr om a previously docketed version of the document. A review of the r ecord, however, reveals no substantive alterations. In both, the factual basis for criminal charges was based upon Br own's confession. And, as the District Court found, neither summary of facts contains any reference to the gover nment's intention to have Jordan testify.

The only discernible difference between the two summaries is that the version read into the r ecord specifies that Brown herself was the source of the information. This does not reflect a change in the gover nment's theory of the case. The government had always planned to use Brown's confession, which is partially corroborated both by the ATF form that she signed when purchasing the firearms and the common scheme of the other straw purchasers.

In addition, there was nothing covert or surr eptitious about the changes to the Plea Memorandum. The government announced the factual basis for Br own's

5

offense in open court in the presence of Brown and her attorney. The District Court then asked Br own if the summary was accurate and correct. Brown r eplied that it was. Accordingly, we do not believe that the changes made during the plea colloquy render Brown's plea of guilty unknowing and involuntary, nor do they provide a fair and just reason for the withdrawal of her plea.

Brown's second argument in support of her request to withdraw her guilty plea fails because the gover nment's alleged failure to disclose its decision not to charge Jordan with count six of the indictment is neither a Brady nor a Giglio violation.1 In Brady v. Maryland, 373 U.S. at 87, 83 S.Ct. at 1196–97, the Supreme Court held that"the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Evidence is favorable to an accused under Brady " `if it would tend to exculpate him or reduce the penalty . . . .' " Id. at 87–88, 83 S.Ct. at 1196–97. The prosecution must also disclose evidence r elevant to the credibility of crucial prosecution witnesses. See Giglio, 405 U.S. at 153, 92 S.Ct. at 766.

Here, Brown has failed to demonstrate that the prosecution's dismissal of count six against Jordan qualifies under Brady or Giglio. Brown maintains that she entered her plea of guilty believing that Jor dan's testimony would be used against her at trial. She contends that the prosecution dismissed count six because Jor dan had an alibi defense. Because her conspiracy charges are "factually linked" to Jordan, she argues that the dismissal

_____

1. We assume for the sake of argument, but do not hold, that Brady may require the government to tur n over exculpatory information prior to entry of a guilty plea. Compare, e.g., United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998) (Brady applies in guilty plea context), and Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir. 1995) (same), with Matthew v. Johnson, 201 F.3d 353, 360–62 (5th Cir. 2000) (suggesting that Brady may not apply). W e find it unnecessary to decide this question here because it is apparent that Brown would not be entitled to relief even if Brady is applicable in this context.

6

undermines the charges against her . Her argument fails for several reasons.

First, Brown has presented no evidence that the government intended to use Jordan as a witness. As noted above, neither the written, docketed Change of Plea Memorandum nor the version read into the r ecord contained any indication that Jordan was to testify. Additionally, Special AUSA Sweeney stated under oath that she never intended to use Jordan as a witness against Brown and had never implied anything to the contrary. She stated:

> My comments are basically that counsel keeps asserting that she was told, it was her impr ession . . . that Curtis Jordan was going to testify against this defendant, there is nothing anywhere the Government wrote, filed or said to lead a reasonable person to so conclude.

> . . . The Government had no notice of anything that it should have or even could have turned over to Ms. Wescott in terms of Mr. Jor dan, I have never spoken to Mr. Jordan, we never proffer ed Mr. Jordan, he was never questioned about this defendant. So counsel's understanding or impression, I submit, is not something for which the Government is r esponsible.

J.A. at 195-196; see also id. at 204 ("There was never an arrangement or even an understanding made that Mr . Jordan would testify against anyone.").

Brown failed to refute this testimony during her hearing. For example, she failed to allege any specific conversations in which the government informed her that Jordan would testify against her. Nor did she produce any written documentation supporting her position. Instead, she merely alleged a general impression or belief that the government would use Jordan in its case against her . This assumption ignores the fact that the government had a signed, Mirandized confession from Brown, as well as ATF forms corroborating certain aspects of her confession. Thus, Jordan's testimony was not essential to the government's case. Brown's lack of evidence coupled with the strength of

7

the government's case absent Jordan's testimony persuade us that the District Court did not err.

Second, Brown is unable to prove that the government dismissed count six against Jordan because of an alibi defense. In support of her position, Brown r elies upon Jordan's Nunc Pro Tunc Motion for Appointment of an Expert, which was filed well after the date of Br own's plea. It asserts that during plea negotiations, the gover nment and Jordan had a dispute over the number of counts for which he was responsible. It alleges that Jor dan may have had an alibi defense and that an investigation was necessary before he would enter a plea of guilty or submit to a lie detector test. An investigation ensued. The motion then states that further plea negotiations led the government to drop the disputed count fr om the guilty plea. J.A. at 218–19. Therefore, according to Brown, Jordan's alibi defense compelled the government to dr op count six of the indictment. We disagree with Br own's interpretation.

The motion simply asserts the possibility of an alibi defense; however, it does not demonstrate that Jordan had an alibi. The mere fact that Jordan maintained that he had an alibi does not mean that one existed. Additionally, the motion neither states nor implies that the gover nment dropped count six because Jordan had an alibi. To the contrary, Special AUSA Sweeney testified that the government chose not to charge Jor dan with count six of the indictment because Brown refused to cooperate and testify against him. Sweeney had no recollection of Jordan's attorney informing her that he had an alibi defense as to count six. See id. at 208–09. As Sweeney testified, Brown was the only person who could identify Jordan as being with her on the date of the purchase, and "when [she] decided to exercise her constitutional right not testify we simply had no evidence left, [and] I had no alternative but to drop that count" against Jordan. Id. at 202–03. Therefore, we agree with the District Court that the "Jordan alibi theory" is sheer speculation.

Even if the Jordan plea agreement qualified under Brady, we still conclude that there has been no violation. Although the duty of disclosure under Brady is closely bound to due process guarantees, "the Constitution is not violated every

8

time the government fails or chooses not to disclose evidence that might prove helpful to the defense." Smith, 210 F.3d at 196 (citation omitted). The pr osecution's failure to disclose evidence rises to the level of a due pr ocess violation "only if the government's evidentiary suppression undermines confidence in the outcome of the trial." Id. In other words, a Brady violation occurs only if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the pr oceeding would have been different." Id. at 197. Here, in light of Brown's confession, the signed ATF Forms that corroborate her confession, and Brown's agreement in open court that the factual basis for the crimes, as recited by the government, was accurate and correct, we conclude that she has not undermined our confidence in the outcome of this case.

Finally, Brown's third argument, that she was "legally innocent," fails. In assessing a defendant's claim of "legal innocence" for purposes of withdrawal of a guilty plea, we must first examine whether the defendant has asserted his or her factual innocence. See Huff, 873 F.2d at 712 (rejecting claim of innocence where defendant failed to deny that he was at the scene of the crime or that he committed the offense). Bald assertions of innocence, however, are insufficient to permit a defendant to withdraw her guilty plea. See United States v. Salgado-Ocampo, 159 F.3d 322, 326 (7th Cir. 1998). "Assertions of innocence must be buttressed by facts in the record that support a claimed defense." Id. (citations omitted). In addition to reasserting her innocence, a defendant must "give sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea." United States v. Jones, 979 F.2d 317, 318 (3d Cir. 1992).

Here, Brown asserts that she is "legally innocent" because without Jordan's testimony, the gover nment would be unable to prove its case against her beyond a reasonable doubt. However, Brown neither ar gues nor presents any evidence that she did not illegally purchasefirearms or conspire to do so. Thus, she has failed to meaningfully reassert her innocence or explain her contradictory positions taken before the District Court. As such, we find no fault with the District Court's analysis.

B. Sentencing

Brown next argues that the District Court erred by refusing to grant her a downward adjustment pursuant to S 3B1.2 for playing a mitigating role in the offense. Brown contends that the PSI supports her position; it states that she is less culpable than others because she only made one purchase. Thus, she argues that the District Court's factual finding on this question "had no evidentiary basis." We exercise plenary review where the District Court's denial of a downward adjustment is based primarily on a legal interpretation of the Sentencing Guidelines. See United States v. Isaza–Zapata, 148 F.3d 236, 237 (3d Cir. 1998). However, where the District Court's decision rests on factual determinations, we review for clear error. See id.

Section 3B1.2 affords a reduction in a defendant's offense level if the defendant was either a minimal or minor participant. It provides:

> Based on the defendant's role in the of fense, decrease the offense level as follows:
>
> (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
>
> (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
>
> In cases falling between (a) and (b), decrease by 3 levels.

U.S. SENTENCING GUIDELINESMANUAL S 3B1.2. The background commentary to this provision indicates that its application depends on the facts of a particular case. Reduction is available for a defendant whose role in the of fense makes her substantially less culpable than the average participant. See id. at cmt. background. However, the mere fact that a defendant was less culpable than his co-defendants does not entitle the defendant to "minor participant" status as a matter of law. See United States v. West, 942 F.2d 528, 531 (8th Cir . 1991). If this were the case, then the least culpable member of any conspiracy would be a minor participant, regardless of the extent of that member's participation. We reject this approach

10

because there are varying degrees of culpability present in virtually every criminal conspiracy.

The Guidelines provide some guidance to district courts attempting to determine whether a particular defendant played a minimal or minor role in an of fense. Application Note 1 provides that in order for a defendant's role to be considered minimal, she must be among the least culpable of those involved in the group conduct. Factors such as a defendant's lack of knowledge or understanding of the overall enterprise and others' activities ar e evidence of minimal role in the offense. See U.S. SENTENCING GUIDELINES MANUAL S 3B1.2 cmt. n. 1. Application Note 3 further explains that "a minor participant means any participant who is less culpable than most other participants, but whose roles could not be described as minimal." Id. at cmt. n.3 (emphasis added).

In addition to the Guidelines, our case law r equires that we consider a number of other factors for deter mining whether a defendant is entitled to a decrease for being a minimal or minor participant in a conspiracy. Specifically, in United States v. Headley, 923 F.2d 1079, 1084 (3d Cir. 1991), we held that a defendant's eligibility for"minor participant" status turned on whether the defendant's "involvement, knowledge and culpability" wer e materially less than those of other participants. This deter mination depends upon the following: (1) the defendant's awar eness of the nature and scope of the criminal enterprise; (2) the nature of the defendant's relationship to the other participants; and (3) the importance of the defendant's actions to the success of the venture. Id.  (quoting United States v. Garcia, 920 F.2d 153, 155 (2d Cir. 1990)). The District Court should consider each of these factors in relation to the other participants in the conspiracy. See Isaza-Zapata, 148 F.3d at 239.

Here, the District Court found that Brown was neither a minimal nor a minor participant. Because the District Court's determination, that Brown's r ole was not mitigating in comparison to the others involved, was primarily factual in nature, we review it only for clear err or. The record supports the District Court's finding that Br own was aware of the nature and scope of the criminal activity. The court

11

found that Brown presented the nature of the scheme to her cousin Latasha Green. She explained that Jordan promised to pay $100.00 for Green's participation. As a result, Green agreed to serve as a straw-purchaser. Brown admitted she was present when Jordan collected Green to make the straw purchase as well as when she returned. Brown also admitted hearing Jordan instruct Green to report that the guns she had purchased for him had been stolen. Thus, Brown initiated Green's recruitment and knew that the purpose of the scheme was to procure untraceable firearms.

Twelve days later, Brown willingly purchased firearms for Jordan so that she could earn her own $100.00. She knew that Jordan intended to take the serial numbers off the gun and wanted her to report them as stolen. At the gun store, the dealer told Jordan that Brown "had to pick out the guns since [she] had the ID." She did so, paid for the weapons with money Jordan provided, andfilled out the necessary forms. Thus, Brown's argument that she had limited knowledge of the scope and nature of the conspiracy is unpersuasive.

The record also demonstrates that Brown's involvement was commensurate with, if not greater than, that of other straw purchasers and that she was important to the success of the venture. Like three of the four straw purchasers involved in the scheme, Brown made a single buy for Jordan. Only one of the four made two purchases. However, unlike her co-conspirators who merely bought guns, Brown "acted as an in-between, between a major figure in the conspiracy and a cohort or co-equal in the conspiracy." J.A. at 322-23. Thus, in this respect, her involvement was more serious than the other purchasers. Moreover, Brown's role was absolutely essential to the success of Jordan's scheme. Without the initial purchase of the weapons from a gun dealer, Jordan would not have been able to re-sell them on the street.

Accordingly, Brown's claim that she was"the least culpable defendant" ignores the obvious: she was responsible for the recruitment of Green, was essential to the acquisition of firearms, and knew that Jordan planned to remove the guns' serial numbers, making them

12

untraceable, and have her report them as stolen. In light of the above, Brown is at least as culpable as the three other women used by Jordan and/or co-defendant Jamal Rice to effectuate their scheme. Therefor e, the record amply supports the District Court's conclusion that Br own failed to demonstrate that she merited a "mitigating r ole" adjustment pursuant to Section 3B1.2.

III. CONCLUSION

In summary, for all the forgoing reasons, the District Court's order and sentence will be affir med.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit