UNITED STATES of America,

v.

**Isaac CARTER a/k/a Jsaac D. Carter Isaac D. Carter, Jr., Appellant.**

No. 02–1183.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a) Dec. 3, 2002.

Decided Dec. 16, 2002.

---

Eugene J. Maurer, Jr., Wilmington, DE, for Appellant.

Edmond Falgowski, Assistant United States Attorney, Wilmington, DE, for Appellee.

Before ROTH, SMITH and CUDAHY, Circuit Judges.*

## OPINION OF THE COURT

SMITH, Circuit Judge.

Appellant argues that the District Court erred in denying him a mitigating role adjustment, pursuant to U.S.S.G. § 3B1.2 because he was less culpable than his co-defendants. Because we find no clear error, we will affirm.

### I.

Appellant Isaac Carter was charged in a two count indictment with conspiracy to distribute and possess with intent to distribute greater than 100 kilograms of marijuana, in violation of 21 U.S.C. § 846, and conspiracy to travel in furtherance of drug distribution and to launder drug proceeds, in violation of 18 U.S.C. § 371. In addition, a one-count information was filed charging the defendant with conspiracy to distribute and possess with the intent to distribute marijuana, in violation of 21 U.S.C. § 846. On August 29, 2001, the appellant pled guilty to the one-count information.

Ten individuals, including appellant, were involved in the conspiracy to transport and distribute marijuana from Tucson, Arizona to Dover, Delaware. The distribution ring operated for three years, from 1997 until 2000, and was organized by William Carter and Bobby Wilson. Appellant's role in the conspiracy was to allow his home in Smyrna, Delaware to be used by the other conspirators as a place to meet and break down the marijuana into one-pound bags. Appellant kept a scale in his home for that purpose. Drug couriers would usually fly from Arizona to the Baltimore–Washington International Airport ("BWI"), and then take a shuttle to appellant's house. However, appellant went to BWI to pick up couriers from the airport on at least one occasion. After arriving at appellant's house, the couriers would wait with the appellant until William Carter or Bobby Wilson arrived. At that point, the couriers would be paid and the blocks of marijuana would be broken down.

Appellant would receive approximately one-half pound to one pound of marijuana for each 35–50 pound shipment brought into his house. The pre-sentence report established that the conspirators made approximately 17 shipments. Therefore, appellant received between 8.5 and 17 pounds of marijuana for his participation in the conspiracy.

On January 8, 2002 the District Court held a sentencing hearing at which appellant protested his counsel's failure to re-

---

* Hon. Richard D. Cudahy, United States Court of Appeals for the Seventh Circuit, sitting by designation

quest a downward departure for minor participation. The appellant stated:

> I'd like the Court to consider my mitigating role in this offense, so being that I never had any extensive knowledge of the organization. I never purchased any quantities of marijuana. I never sold any quantities of marijuana. My only monetary gain was the little bit I received for my personal use. That is all. And for these reasons, your Honor, I would ask you to grant me a downward departure in regards to U.S.S.G. § 3B1.2 A or B.

The District Court then stated:

> Well, as I said, the reason they assign one judge all the cases in a related conspiracy like this is because that gives the judge the opportunity to see exactly what role everyone was playing vis-a-vis each other. And I have to say that I think in terms of the folks who were involved over a course of years, that the least amount of time given was about 50 months, and the only reason that individual got 50 months is because [he] had no criminal history at all. You, Mr. Carter, unfortunately, do have a criminal history. And I don't find that allowing the use of your home over the course of time to allow what obviously is an illegal operation to go forward is particularly minimal. So, in that regard, I certainly don't believe a downward departure is appropriate.

The court then sentenced appellant to 57 months incarceration, at the low end of the sentencing guideline range.

The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231. This court has jurisdiction over the appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II.

This Circuit employs a mixed standard of review when considering whether a defendant is entitled to a minor role adjustment. *See United States v. Isaza–Zapata,* 148 F.3d 236, 237 (3d Cir.1998). When the District Court's denial was based primarily on legal interpretation of the Sentencing Guidelines, this court's review is plenary. *See id.* If the District Court's denial was based on factual determinations, this court reviews only for clear error. *See id.*

## III.

Section 3B1.2 of the Sentencing Guidelines provides for a two-level reduction in offense level if the defendant was a "minor participant" in the criminal activity and a four level reduction in offense level if the defendant was a "minimal participant" in the criminal activity. *See* U.S.S.G. § 3B1.2. The guideline application notes state that "a minor participant means any participant who is less culpable than most other participants but whose role could not be described as minimal." U.S.S.G. § 3B1.2, Application Note 3.

A minor role adjustment is only available to a defendant involved in concerted criminal activity with other participants, whose role is minor in comparison to those other participants. *See Isaza–Zapata,* 148 F.3d at 238. In assessing eligibility for a minor role adjustment, this court has recommended that the District Court use the following three factors to determine the defendant's relative culpability:

> 1) the nature of the defendant's relationship to the other participants;

> 2) the importance of the defendant's actions to the success of the venture; and

> 3) the defendant's awareness of the nature and scope of the criminal enterprise.

*United States v. Headley,* 923 F.2d 1079 (3d Cir.1991). It is defendant's burden to prove that he is entitled to the adjustment. *See Isaza–Zapata,* 148 F.3d at 240.

In addition, this court has noted that:

the mere fact that a defendant was less culpable than his co-defendants does not entitle the defendant to "minor participation" status as a matter of law ... If this were the case, then the least culpable member of any conspiracy would be a minor participant, regardless of the extent of that member's participation. We reject this approach because there are varying degrees of culpability present in virtually every criminal conspiracy.

*United States v. Brown,* 250 F.3d 811, 819 (3d Cir.2001) (internal citations omitted).

Here, since the District Court's determination that appellant did not play a minor role was primarily factual in nature, we must review it for clear error. A District Court does not commit clear error by failing to explicitly address the factors laid out in *Headley. See United States v. Carr,* 25 F.3d 1194, 1208 (3d Cir.1994).

First, although it is clear that appellant's participation was minor in comparison to that of William Carter and Bobby Wilson, who organized the conspiracy, appellant introduced no evidence suggesting that his participation was minor in comparison to the remaining co-defendants. Second, the court suggested that the defendant's actions were critical to the success of the venture, and this was not clearly erroneous since defendant provided a safe haven to the drug couriers where they could receive payment and break down their shipments. Finally, it was permissible for the court to conclude that, because appellant allowed seventeen shipments of drugs to arrive at his house over the course of three years, the scope of the conspiracy and its illegality was "obvious"

to him. Accordingly, because the District Court's denial of a minor role reduction was not clearly erroneous, we will affirm the order of the District Court.