**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3867
_____

UNITED STATES OF AMERICA

v.

YOMI T. JAGUNNA,
                    Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Crim. No. 09-cr-00197-001)
District Judge:  Honorable Susan D. Wigenton
_____

Submitted Under Third Circuit LAR 34.1(a)
April 28, 2011
_____

Before: BARRY, HARDIMAN and TASHIMA,[*] Circuit Judges

(Opinion Filed: May 3, 2011)
_____

OPINION
_____

BARRY, Circuit Judge

     Yomi Jagunna appeals from the 141-month sentence that the District Court

_____

    [*] Honorable A. Wallace Tashima, Senior Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

imposed upon him for his role in an international identity-theft ring. As we conclude that the Court neither procedurally erred nor imposed a substantively unreasonable sentence, we will affirm.

## I. Background

On March 23, 2009, a grand jury returned a 41-count indictment charging Jagunna with one count of conspiracy to transfer, possess, and use means of identification, in violation of 18 U.S.C. § 1028(f), and forty counts of transferring, using, and possessing means of identification, in violation of 18 U.S.C. §§ 1028(a)(7), 1028(b)(1), and 2. On May 8, 2009, Jagunna pleaded guilty to the conspiracy count.

According to the Pre-Sentence Report (PSR), Jagunna's role was to determine the social security numbers of individuals selected as targets by his co-conspirators. To do so, he registered for an account with Accurint, a commercial public records database, in the name of "Elam Collection Agency," a fictitious entity. On behalf of this collection agency, he conducted 102,111 searches over the 78-month period between May 2002 and October 2008. His co-conspirators paid him $30 per search, notwithstanding the fact that no search cost him more than one dollar to perform and most cost only 25 cents. The government contends that Jagunna netted over $1 million as a result of his conduct.

Using the social security numbers provided by Jagunna, his co-conspirators accessed victims' accounts, emptied them, and transferred the money abroad. The PSR concluded that the intended loss exceeded $9.4 million and that the actual loss exceeded

2

$3 million.

The PSR calculated that the base offense was six, pursuant to U.S.S.G. § 2B1.1(a)(2). It added an additional twenty levels pursuant to § 2B1.1(b)(1)(K), as the intended loss amount fell between $7 million and $20 million. Two levels were added pursuant to § 2B1.1(b)(2)(A)(i) because there were between ten and fifty victims, and two more levels were added pursuant to § 2B1.1(b)(10)(C), as Jagunna possessed five or more unlawfully obtained social security numbers. With a three-level reduction for acceptance of responsibility, the total offense level was twenty-seven. This offense level, combined with a criminal history category of I, yielded a Guidelines range of 70 to 87 months.

Jagunna's sentencing took place on September 22, 2009. At sentencing, the District Court otherwise adopted the PSR but determined that the two-level enhancement for the use of sophisticated means applied, *see* U.S.S.G. § 2B1.1(b)(9)(C), bringing the total offense level to 29. In light of its analysis of the section 3553(a) factors, the Court further determined that it would be appropriate to vary upwards to level 33. A sentence of 141 months was thereafter imposed.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have appellate jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

When reviewing a sentence on appeal, we first ensure that the sentencing court did not commit a serious procedural error, "such as failing to calculate (or improperly

3

calculating) the Guidelines range [or] treating the Guidelines as mandatory." *Gall v. United States*, 552 U.S. 38, 51 (2007). We review the factual findings underlying the District Court's Guidelines calculations for clear error. *United States v. Veksler*, 62 F.3d 544, 550 (3d Cir. 1995). We then "review the substantive reasonableness of the sentence under an abuse-of-discretion standard," while keeping in mind that "[a]s long as a sentence falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, we must affirm." *United States v. Wise*, 515 F.3d 207, 218 (3d Cir. 2008).

### III. Discussion

Jagunna argues that the District Court erred in (1) failing to explain how it arrived at a total offense level of 29, (2) applying the sophisticated-means enhancement, (3) failing to find that he played a minor role in the offense, and (4) improperly weighing the section 3553(a) factors. No contention has merit.

### A. Failing to Explain Guidelines Calculations

Jagunna first contends that the District Court erred because "it is impossible to determine how the court arrived at a total offense [l]evel of 29, even if all the comments of the court are examined in their totality." (Jagunna Br. 3.) This argument fails, as the Court ruled on each objection to the PSR raised by the parties and issued clear rulings that it memorialized on the record.

As noted above, the PSR recommended a total offense level of 27, and it did not

recommend a two-level enhancement for the use of sophisticated means. The District

Court noted that Jagunna had made two requests for a downward departure: one on the

basis of his minor role, and one because of his medical status and family condition.

(A73-74.) The Court denied these requests for reasons that it explained on the record.

(A74-75.)[1] The Court further noted that the government had requested an enhancement

for the use of sophisticated means, and the Court indicated that it would grant that

enhancement for reasons that it indicated on the record. (A76.) It is thus clear that the

Court began with the 27 levels recommended by the PSR, added two levels for the use of

sophisticated means, and arrived at the total offense level of 29.

## B. Sophisticated Means Enhancement

Jagunna next contends that the District Court erred by adding two levels pursuant

to U.S.S.G. § 2B1.1(b)(9)(C), which applies if "the offense involved sophisticated

means." Application Note 8(b) defines sophisticated means as "especially complex or

especially intricate offense conduct pertaining to the execution or concealment of an

offense," and further provides that "[c]onduct such as hiding assets or transactions . . .

through the use of fictitious entities . . . ordinarily indicates sophisticated means." In

determining that the offense involved sophisticated means, the Court observed,

---

[1] In his sentencing memorandum, Jagunna also suggested that the intended loss did not exceed $7 million, such that only an additional eighteen levels would be added pursuant to § 2B1.1(b)(1)(K). Although the District Court did not directly address this contention while calculating the Guidelines, as part of its section 3553(a) analysis, it noted that the government's assessment of the loss amount was "extremely conservative." (A79.)

As it relates to this being a sophisticated means, I do think that this is appropriate, and the Guideline calculation should be adjusted, to give that two point addition because this was certainly sophisticated, and it was included in the presentence report that it was a large-scale scheme, but it was not sophisticated. But I disagree. I do think it was extremely sophisticated, and I think what's been pointed out is the fact that what Mr. Jagunna was doing at 25 cents a hit, essentially, he was being paid $30 a hit for that. And to be involved in this for some six years, I think it is at the very least a sophisticated means.

(A75-76.)

We note first that the District Court did not clearly err in concluding that the conduct in which Jagunna himself engaged was sophisticated within the meaning of the Guidelines, insofar as it involved his setting up a fictitious collection agency through which to process his Accurint searches. Second, Jagunna has conceded that there were "sophisticated techniques employed by the codefendants" (Jagunna Br. 6) and that his co-conspirators were engaged in "a very sophisticated operation." (A56.) Importantly, the language of § 2B1.1(b)(9)(C) is directed to the offense, and not the defendant's individual conduct. *Cf.* U.S.S.G. app. C, amend. 577, p. 5 (explaining that the similar enhancement, in U.S.S.G § 2T1.1, "is based on the overall offense conduct for which the defendant is accountable," and not "the personal conduct of the defendant"). Accordingly, the Court did not clearly err in applying the § 2B1.1(b)(9)(C) enhancement.

## C. Minor Role

Jagunna contends, next, that the District Court erred in denying his request for a two-level reduction pursuant to U.S.S.G. § 3B1.2(b), which applies where the defendant

6

is a "minor participant" in the criminal activity. He argues that although "the role of Mr. Jagunna was critical to the operation of [the] enterprise, . . . compared to the activities performed by the codefendants, the role of Mr. Jagunna was minor and could have been accomplished by many other persons." (Jagunna Br. 5.)

In denying the request for the reduction, the District Court explained,

> I don't find in any way, shape or form that what Mr. Jagunna did was a minor aspect of this criminal enterprise. It was extremely important, and I think it's been said several times during this — during argument that what you did, Mr. Jagunna, was essentially give the keys to the kingdom. And as a result of that, all these thefts to a staggering level occurred from these innocent individuals. So I don't think that's appropriate.

(A74.)

As we have previously held, "the mere fact that a defendant was less culpable than his co-defendants does not entitle the defendant to 'minor participant' status as a matter of law. If this were the case, than the least culpable member of any conspiracy would be a minor participant, regardless of the extent of that member's participation." *United States v. Brown*, 250 F.3d 811, 819 (3d Cir. 2001) (citation omitted). Rather, determination of minor-participant status depends upon "(1) the defendant's awareness of the nature and scope of the criminal enterprise; (2) the nature of the defendant's relationship to the other participants; and (3) the importance of the defendant's actions to the success of the venture." *Id.*

The District Court found that Jagunna's conduct was critical to the success of the conspiracy: "what you did, Mr. Jagunna, was essentially give the keys to the kingdom."

7

(A74.)  It further found that he "clearly understood the purpose for which they were obtaining this information" and was generously paid for his role in the conspiracy.  (A77.) At the same time, Jagunna himself concedes that his role was "critical to the operation of [t]his enterprise."  (Jagunna Br. 5.)  Accordingly, the Court did not clearly err in finding that he was not a minor participant in the conspiracy.

### D.  Section 3553(a)

Jagunna's final argument is that the District Court improperly weighed the section 3553(a) factors, both by denying his request for a variance and by instead varying upwards.

In support of his request for a downward variance, Jagunna noted that (1) he is HIV-positive, and (2) he is the primary caretaker for his 11-year-old autistic son.  In rejecting these arguments, the District Court concluded that "the Bureau of Prisons is equipped to deal" with his medical status and that, although it was unfortunate that Jagunna's son would be affected by his father's incarceration, collateral effects on families are an unfortunate but unavoidable consequence of most criminal prosecutions. (A74-75.)  The Court did not abuse its discretion in so concluding.  Indeed, we have observed countless times that a "decision by the Court . . . not to give such mitigating factors the weight that [the defendant] contends they deserve does not render [the] sentence unreasonable." *United States v. Lessner*, 498 F.3d 185, 204 (3d Cir. 2007).

Neither did the District Court err by varying upward.  In justifying the variance,

8

the Court noted that the crime "was egregious" (A76) and that while Jagunna qualified for a three-level reduction for acceptance of responsibility, his acceptance "is marginal, at best." (A77.) The Court further noted that although Jagunna was in criminal history category I, he had a prior conviction for theft by deception (PSR ¶ 171; A79.) Finally, the Court found that the loss amount reflected in the PSR was "extremely conservative" and that the "amount of money that was actually taken, and that which was intended to be taken," was likely "much, much higher." (A79-80.) The Court therefore determined that "it was appropriate to vary from the level that I was starting at" "to a level 33." (A80.) The functional result of the variance was to increase the applicable Guidelines range from 87 to 108 months to 135 to 168 months.

Where "the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Id.* at 568. Because the District Court adequately explained its reasons for varying above the Guidelines range and because we cannot say that no reasonable sentencing court would have done so for the same reasons, we cannot conclude that the sentence imposed upon Jagunna was substantively unreasonable.

## IV. Conclusion

We will affirm the judgment of sentence.