**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3440
_____

UNITED STATES OF AMERICA

v.

OMAR CALIPH AQUIL,

Appellant

Appeal from the District Court for the Middle District of Pennsylvania
(No. 12-cr-00006-21)
District Judge:  Honorable Yvette Kane

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 6, 2016

Before:  CHAGARES, KRAUSE, and SCIRICA, <u>Circuit Judges</u>.

(Filed: July 19, 2016)
_____

OPINION*
_____

CHAGARES, <u>Circuit Judge</u>.

    Omar Caliph Aquil appeals his sentence following his plea of guilty to a charge of

conspiracy to distribute and possess with intent to distribute crack cocaine.  For the

following reasons, we will affirm the District Court's judgment of sentence.

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

I.

We write solely for the parties and therefore recite only the facts necessary to our disposition. This matter involves a drug trafficking conspiracy. Members of the organization obtained cocaine from Colombian suppliers in Aruba, transporting it to Puerto Rico and then to the East Coast of the United States. The conspiracy was headed by Oscar Sanchez, Estevan Hernandez Claudio, and Raul Vargas. Court-authorized wiretaps in the fall of 2011 revealed that Aquil was a Harrisburg-based dealer who purchased cocaine from Vargas. In October 2012, Aquil was arrested, waived his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and spoke with investigators. Aquil told investigators that he had been obtaining cocaine from Vargas beginning in 2007, and that he had acquired amounts of between one and four ounces at a time. Aquil explained that after Vargas' arrest in 2012, he could not find quality cocaine for a good price and therefore did not have a source of supply.

On February 10, 2015, Aquil pled guilty to a Superseding Felony Information charging him with conspiracy to distribute and possess with intent to distribute crack cocaine pursuant to 21 U.S.C. § 846. As part of the plea agreement, it was stipulated that Aquil was responsible for between 196 grams and 280 grams of crack cocaine. According to the Government and the Presentence Report, this amount of cocaine is a "conservative" figure. P.S.R. ¶ 12; Gov't Br. 7 n.1.

The revised Presentence Report calculated a Base Offense Level of 28, and applied a 3 level reduction for acceptance of responsibility, yielding a Total Offense

2

Level of 25. His Criminal History Category was IV. This resulted in an advisory Sentencing Guidelines range of 84 months to 105 months.

At Aquil's sentencing hearing, the Court agreed with his objection to the calculation of his criminal history points, reducing it by 2 points. The Court denied Aquil's objection that his Offense Level should be reduced 2 points because he was a minor participant. The resulting modification yielded a Total Offense Level of 25 and a Criminal History Category of III, for a Guidelines range of 70 months to 87 months. Aquil was sentenced to 70 months imprisonment and 3 years of supervised release. He filed a timely appeal.

## II.[1]

"We exercise plenary review where the district court's denial of a downward adjustment is based primarily on a legal interpretation of the Sentencing Guidelines. However, where the district court's decision rests on factual determinations, we review for clear error." United States v. Isaza-Zapata, 148 F.3d 236, 237 (3d Cir. 1998) (citations omitted).

## III.

Section 3B1.2(b) of the Sentencing Guidelines provides that if a criminal defendant is a "minor participant" in any criminal activity, the defendant's offense level should be reduced by 2 levels. U.S.S.G. § 3B1.2(b). Aquil argues that it was error for

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291.

the District Court to deny his request that his offense level be reduced 2 points because he fits the definition of a minor participant.

A.

The Government first argues that the "minor participant" reduction is not even applicable to Aquil, pointing to commentary to U.S.S.G. § 3B1.2. Application Note 3(B) to U.S.S.G. § 3B1.2 provides:

> If a defendant has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his actual criminal conduct, a reduction for a mitigating role under this section ordinarily is not warranted because such defendant is not substantially less culpable than a defendant whose only conduct involved the less serious offense.

U.S.S.G. § 3B1.2, Application Note 3(B); see also United States v. Olibrices, 979 F.2d 1557, 1561 (D.C. Cir. 1992) ("[A] defendant is not entitled to have her sentence reduced for a minimal role in relevant conduct that had no part in the calculation of the base level.").

According to the Government, Aquil stipulated to responsibility for 196 to 280 grams of crack cocaine, but that amount did not account for the "enormous amounts" of cocaine involved in the conspiracy generally, for which Aquil may "potentially" be responsible. Gov't Br. 20. Therefore, according to the Government, Aquil pled guilty to an offense "significantly less serious" than what was warranted by his "actual criminal conduct," precluding application of the "minor participant" reduction under Application Note 3(B).

This argument does not seem so clear cut because it is not established what offense was "warranted" by Aquil's "actual criminal conduct." The Government

4

repeatedly states that the stipulated amount of cocaine is "conservative," but it has not shown that his actual conduct warrants a greater offense. See Isaza-Zapata, 148 F.3d at 241 ("[The defendant] was sentenced on the basis only of the amount of drugs which he carried, but there is no indication that he was convicted of an offense less serious than warranted by his actual conduct, and [the relevant Application Note] should not preclude a minor role adjustment."). Even though the Government represents, for example, that Aquil routinely dealt in 1 to 4 ounces (28.349 grams to 113.396 grams) per transaction over the course of at least five years, it has not told us how often those transactions occurred. The Presentence Report only states these transactions occurred on "numerous" occasions. A "conservative" estimate of the drugs Aquil handled does not mean his actual conduct warranted a greater offense. Therefore, as a threshold matter, Aquil is not precluded from claiming the minor participant reduction.

B.

Even though Application Note 3(B) does not preclude the minor participant adjustment, Aquil is still not entitled to it. Under our case law, we look to certain factors to determine whether a defendant is entitled to a reduction for a minor role under § 3B1.2. These factors are "(1) the defendant's awareness of the nature and scope of the criminal enterprise; (2) the nature of the defendant's relationship to the other participants; and (3) the importance of the defendant's actions to the success of the venture. The District Court should consider each of these factors in relation to the other participants in the conspiracy." United States v. Brown, 250 F.3d 811, 819 (3d Cir. 2001) (citations and quotation marks omitted); see also Isaza-Zapata, 148 F.3d at 238 ("The district courts are

5

allowed broad discretion in applying this section, and their rulings are left largely undisturbed by the courts of appeal."). It is the defendant who "bears the burden of demonstrating that other participants were involved and that, under the standards set forth above and the facts of his particular case, the minor role adjustment should apply." Id. at 240.

The parties disagree about whether Aquil is a minor participant. Aquil argues that he was merely a street-level dealer, unaware of the details of the international smuggling ring. Aquil says that he purchased drugs from his childhood friend Vargas and was not important to the larger criminal enterprises' success. Aquil stresses that he never left Pennsylvania.

Our factors set forth in Brown cut against Aquil. Considering the first factor, the record suggests Aquil was aware of the nature and scope of the drug conspiracy. He purchased drugs from Vargas, a senior member in the conspiracy, on numerous occasions since 2007. While Aquil's attorney stated at the sentencing hearing that Aquil was not aware that the drugs were coming from Aruba and Puerto Rico, the attorney did state that "I assume he had to have some imagination, realized that the cocaine started somewhere, probably not in the United States." Appendix ("App.") A26. Even if Aquil did not know precisely where the drugs were coming from, he surely knew they came from outside the United States and that Aquil was operating with others. Considering the second factor, Aquil regularly made contact with Vargas on a number of occasions over a number of years. This was systematic and continuous contact with a key figure of the conspiracy, not simply contact only once or twice, but on multiple occasions since 2007, as the

6

Government correctly points out. In contrast with another co-defendant who received the minor role reduction because she was a drug courier on a single occasion, the District Court found that Aquil's conduct was an "extended and lengthy involvement over the course of years." App. A27-29.

Most importantly, under the third factor, Aquil's actions played a significant role to the success of the venture. Aquil regularly purchased drugs from Vargas over many years, and he was a drug dealer in the Harrisburg area. Notably, Aquil purchased powder and converted it into crack cocaine. As the Government argues, the distribution and refining of the cocaine was vital to the success of the enterprise. The refinement of the drugs was crucial as it likely expanded the reach of drug consumers.

After considering these factors, we agree with the Government that Aquil has failed to meet his burden that he is entitled to the minor participant reduction. See Isaza-Zapata, 148 F.3d at 240.

### III.

For the foregoing reasons, we will affirm the District Court's judgment of sentence.