NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2241
_____

UNITED STATES OF AMERICA

v.

JONATHAN SNYDER,

Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 2-15-cr-00248-002)
District Judge: Honorable Juan R. Sanchez
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 7, 2019

Before: AMBRO, SHWARTZ, and FUENTES, Circuit Judges

(Opinion filed: January 30, 2019)

_____

OPINION[*]
_____

AMBRO, Circuit Judge

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Defendant-appellant Jonathan Snyder appeals the sentence for his four-count conviction of wire fraud under 18 U.S.C. §§ 2 & 1343.  His sentence was 37 months' imprisonment, three years of supervised release, a special assessment of $400, and restitution of $305,000.  Snyder claims the District Court erred by misapplying the Sentencing Guidelines and declining to grant a downward variance.  We perceive no error and thus affirm.

I.    Background

Snyder and another man, Trevor Summers, were co-owners of two companies, Resound, LLC and StrawAds, Inc.  Each man owned a substantial interest and exercised substantial control over both companies, though Summers had overriding authority when he and Snyder disagreed.  The business plan for Resound was to develop a process for printing food-grade advertisements on drinking straws, hold the patents for the process, and collect royalties when other companies used the patents.  The business plan for StrawAds was to produce drinking straws using the patented Resound process.  Investors in Resound would be paid from royalties on its patents and investors in StrawAds would be paid from proceeds from straw sales.  Between March 2010 and August 2011, Summers and Snyder obtained $485,000 in investment capital for the companies and hired several employees.

To entice and retain these employees and investors, Summers and Snyder made false representations about their companies' ownership of patents, machinery, and purchase-contracts from big-name customers.  With these and other falsehoods, they maintained for a while the illusion of a promising venture.  But the companies never

came close to turning a profit. As they slipped into financial distress, relations broke down among Snyder, Summers, their employees, and their investors. In the end, the employees lost their jobs, the investors lost their money, and Snyder and Summers were indicted as co-defendants for six counts of wire fraud. Each of the counts was linked to a specific investment in the companies or a specific email sent by Summers or Snyder.

Summers pled guilty but Snyder went to trial. He was convicted of four counts and acquitted of two. The convicted counts related to a $110,000 wire transfer from "J.C." in September 2010, a $50,000 wire transfer from "B.M." in October 2010, a $10,000 wire transfer from "P.O." in December 2010, and an email from Snyder to "K.F." in March 2011. The acquitted counts related to a $15,000 wire transfer from "P.D." in November 2010 and an email from Summers to "K.F." in March 2011.

At sentencing the District Court adopted the facts and Guidelines calculations in Snyder's pre-sentence report. It established a base offense level of seven, plus a twelve-level enhancement under U.S.S.G. § 2B1.1 because the "actual loss" attributable to Snyder was $305,000, plus a two-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(i) because the offense involved more than ten victims. It thus calculated an adjusted offense level of 21, which yielded an advisory Guidelines range of 37 to 46 months' imprisonment. After considering his various objections, the Court sentenced Snyder as noted above. He appeals the sentence to us.[1]

---

[1] We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II.     Discussion

Snyder contends the District Court erred by denying his request for a mitigating-role adjustment, calculating a loss amount of $305,000 (he says it should have been $240,000), and denying his request for a downward variance. We address each argument in turn.

### A.  Mitigating Role

The mitigating-role Guideline "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2 cmt. 3(A). To determine whether a defendant qualifies for a mitigating-role adjustment, the sentencing court must assess the relative culpability of the defendant compared to participants in the overall criminal activity in which the defendant was involved. *See United States v. Isaza–Zapata*, 148 F.3d 236, 238–39 (3d Cir. 1998). We have identified several factors that should guide this determination, *see United States v. Headley*, 923 F.2d 1079, 1084 (3d Cir. 1991), and the Sentencing Commission has issued further guidance in comments to the Guideline, *see* U.S.S.G. § 3B1.2 cmt. 3. So long as the sentencing court employs the correct inquiry, we review the denial of a mitigating-role adjustment for clear error. *See United States v. Self*, 681 F.3d 190, 200 (3d Cir. 2012).

The District Court addressed Snyder's request for a mitigating-role adjustment by engaging in a detailed comparative analysis between his conduct and that of Summers. The Court expressly noted that Snyder understood the scope of the criminal scheme, participated directly in decision-making relevant to the scheme, exercised decision-

4

making authority over important aspects of it, and stood to benefit personally from its success.

Snyder claims he should have received a mitigating-role adjustment because his business partner, Summers, was the driving force behind the scheme. But even if Summers made a greater contribution to that scheme than did Snyder, that does not mean the Court was required to grant him a mitigating-role adjustment. *See United States v. Brown*, 250 F.3d 811, 819 (3d Cir. 2001). That determination is not so rigid; rather, it gives a district court "broad discretion in applying" the adjustment, *Isaza-Zapata*, 148 F.3d at 238, so long as it engages in the required comparison and considers relevant factors. The District Court did that here, and we perceive no error in its analysis. Although Snyder may have been less culpable than Summers, he nonetheless was actively involved in forming and managing the businesses, making written and oral representations to investors and employees, and profiting financially (at least temporarily) from the various falsehoods he and Summers made. On this factual record we cannot say the Court's denial of a mitigating-role adjustment was clearly erroneous.

### B. Loss Amount

For certain economic offenses, including wire fraud, the Guidelines provide upward enhancements based on the amount of loss attributable to a defendant's offense. U.S.S.G. § 2B1.1. The Guidelines require an individualized inquiry into the amount of loss attributable to a specific defendant. *See United States v. Metro*, 882 F.3d 431, 439, 441 (3d Cir. 2018). To calculate the loss attributable to Snyder, the District Court started from the total $485,000 he and Summers received for their businesses from outside

investors. It then excluded $180,000 invested by S.K. ($150,000), S.C. ($20,000), and T.A. ($10,000), yielding a loss amount of $305,000. That resulted in a twelve-level enhancement because it is greater than $250,000 and not greater than $550,000. U.S.S.G. § 2B1.1(b)(1)(G)–(H). The Court declined Snyder's request to exclude investments made by B.C. ($50,000) and P.D. ($15,000). Had it excluded those investments, Snyder's loss amount would have been $240,000 and his adjusted offense level would have been two levels lower. *See id.* § (b)(1)(F)–(G).

Snyder contends the District Court should have excluded the $50,000 investment by B.C. in August 2011 because, by that time, Snyder was extricating himself from the relationship with Summers and had no intention of seeking further investment. In other words, Snyder argues that B.C.'s investment was not "(i) within the scope of [his] jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity," as would be required to impute the investment to him under the Guidelines. *See* U.S.S.G. § 1B1.3(a)(1)(B). But the District Court rejected these arguments at sentencing based on its factual finding that Snyder was still involved in the companies as a partner when B.C. made the investment. We review that application of the Guidelines to Snyder's specific factual circumstances for abuse of discretion, *see Metro*, 882 F.3d at 437, and we perceive none. The Court was within its discretion to reject Snyder's contention that he had so extricated himself from the companies' affairs by August 2011 that he was no longer a participant in the fraudulent scheme or was unable to foresee that Summers would continue the companies' practice of obtaining investment to shore up declining finances.

6

Snyder also contends the Court should have excluded the $15,000 investment by P.D. in November 2010 because, according to him, he could not reasonably have foreseen it. To support this argument, he emphasizes that the jury acquitted him of Count Three of the indictment, which was premised on the $15,000 investment by P.D. His theory is that the jury must have concluded he was not responsible for P.D.'s investment, which, he says, precludes the sentencing court from including that investment in his loss amount. But the jury's acquittal on the fraud count related to P.D.'s investment does not compel the Court to disregard that investment at sentencing and cannot be interpreted to mean the jury made any specific factual finding. *See United States v. Ciavarella*, 716 F.3d 705, 735–36 (3d Cir. 2013) ("'[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge so long as that conduct has been proved by a preponderance of the evidence.'" (quoting *United States v. Watts*, 519 U.S. 148, 157 (1997))). To the contrary, the District Court had discretion at sentencing to include P.D.'s investment in Snyder's loss amount under the preponderance-of-the-evidence standard. *See id.* Given the record evidence of Snyder's ownership, control, and management of the companies, as well as his direct involvement in soliciting investment from the man who brought in P.D.'s investment, the Court was within its discretion to conclude that investment was reasonably foreseeable to Snyder.

In summary, the District Court did not abuse its discretion in declining Snyder's request to exclude from his loss amount the investments by B.C. and P.D.

## C. Downward Variance

Snyder claims the District Court erred by denying his request for a downward variance. To make this argument, he invokes the general rule that a sentence under 18 U.S.C. § 3553(a) must be "'sufficient, but not greater than necessary,' to accomplish the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (quoting 18 U.S.C. § 3553(a)). We review the District Court's denial of a downward variance for abuse of discretion. *Id.* at 111.

Snyder says he should have received a sentence of 24 months of house arrest without any term of imprisonment. In making this argument, he essentially disputes the weight the Court gave to various sentencing considerations. He claims it should have shown more leniency in light of his lack of criminal history, his family's reliance on him, his need to continue working to pay restitution, his good character as attested by various witnesses, his low likelihood of reoffending, and his charitable work in the community. But Snyder does not suggest the Court failed entirely to consider these factors or otherwise commit any procedural error under § 3553(a). Accordingly, he cannot establish that it erred in denying the variance unless he shows that "no reasonable sentencing court" would have done so. *See United States v. Harris*, 751 F.3d 123, 129 (3d Cir. 2014) (quoting *United States v. Tomko*, 562 F.3d 567, 568 (3d Cir. 2009) (*en banc*)). And he fails to make that showing here. The record shows the Court carefully considered each of the mitigating factors Snyder now highlights and carefully weighed the relevant factors under § 3553(a). The sentence may have been greater than what Snyder requested, but it was at the bottom of the Guidelines range. *See United States v.*

8

*Woronowicz,* 744 F.3d 848, 852 (3d Cir. 2014) ("Sentences within the Guidelines range are more likely to be reasonable than those that fall outside this range." (quotation omitted)). Indeed it was a lenient sentence given that Snyder was convicted of four counts of wire fraud based on falsehoods he told for his own financial gain, with more than ten victims and more than $300,000 in financial loss. Under these circumstances we cannot conclude the Court abused its discretion in declining to grant Snyder a downward variance from the Guidelines range.

\*     \*     \*     \*     \*

We sustain none of the errors Snyder claims on appeal and thus affirm.